364 So.2d 1004 (1978)
STATE of Louisiana
v.
Dudley Patrick BEAVERS.
No. 62104.
Supreme Court of Louisiana.
November 13, 1978.
Rehearings Denied December 14, 1978.
Murphy W. Bell, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Marilyn C. Castle, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
In this case we consider whether special verdicts should be submitted to the jury in a criminal trial.
Dudley Patrick Beavers was charged in a single-count bill of information with "rioting" in violation of La.R.S. 14:329.1-329.7. Defendant was tried by a jury of twelve persons on October 31-November 11, 1977. The jury returned three separate guilty verdicts: guilty of participating in a riot; guilty of participating in a riot in which the death of any person occurs; and guilty of the wrongful use of public property in which the death of any person occurs. The trial judge ordered all three verdicts recorded, and, on February 14, 1978, the defendant was sentenced to twenty years at hard labor.
Defendant appealed relying on eight assignments of error for a reversal of his conviction and sentence. Because one assignment has reversible merit the others are pretermitted.
This is one of the so-called "Black Muslim cases" which have been reviewed by this Court. See, State v. Bell, 315 So.2d 307 (La.1975), 346 So.2d 1090 (La.1977); State *1005 v. Williams, 354 So.2d 562 (La.1978). These cases arose out of a riot which erupted in Baton Rouge on January 10, 1972. On that day members of the Black Muslim sect parked several vehicles across an intersection of public streets. When police attempted to remove the vehicles and disperse the crowd, violence broke out, resulting in the serious bodily injury of a reporter and the deaths of two police officers and three black demonstrators.
Defendant admitted at trial that he was a member of the Black Muslim group present at the scene of the public disorder. Defendant testified, however, that he left immediately when the officers ordered the group to disperse. He specifically denied being present when the shooting began. Defendant fled from Baton Rouge after the incident and was not apprehended until late in 1975.
The reversible error occurred when the trial judge refused to sustain the defendant's motion in arrest of judgment. The motion was based on the ground that the verdicts were not responsive to the indictment or were otherwise so defective they could not form the basis of a valid judgment. La.C.Cr.P. art. 859(5). To understand why the verdicts were defective it is necessary to know some of the events which occurred during the trial.
Defendant was charged under Act 176 of 1969, extant as La.R.S. 14:329.1-329.8, which proscribes five separate crimes: inciting to riot, La.R.S. 14:329.2; participating in a riot, La.R.S. 14:329.7(A); failure to comply with a lawful command to disperse, La.R.S. 14:329.3; wrongful use of public property, La.R.S. 14:329.4; and interference with the educational process, La.R.S. 14:329.5. All of these acts are punishable by one of three penalties, which vary in severity with the consequences of the crime, as provided in La.R.S. 14:329.7:
"A. Whoever willfully is the offender or participates in a riot, or is guilty of inciting a riot, or who fails to comply with a lawful command to disperse, or who is guilty of wrongful use of public property, or violates any other provision hereof shall be fined not more than five hundred dollars or be imprisoned not more than six months, or both.
"B. Where as a result of any willful violation of the provisions of R.S. 14:329.1 to 14:329.8 there is any serious bodily injury or any property damage in excess of five thousand dollars, such offender shall be imprisoned at hard labor for not more than five years.
"C. Where, as a result of any willful violation of the provisions of R.S. 14:329.1 to 14:329.8, the death of any person occurs, such offender shall be imprisoned at hard labor for not to exceed twenty-one years."
The bill of information in the instant case, in pertinent part, charged the defendant with the single offense of "rioting" as follows:
"* * * DUDLEY PATRICK BEAVERS on or about the tenth (10) day of January, 1972, committed the offense(s) of RIOTING (by inciting, participating & wrongful use of public property violating Louisiana Revised Statutes La.R.S. 14:329.1, 329.2, 329.4(1) & (2) and 329.7, in that you incited a riot which resulted in the deaths of Ralph Hancock and Dwayne Wilder, specifically against the provisions of La.R.S. 14:329.1, La.R.S. 14:329.2, La. R.S. 14:329.7 and that on the above date set forth, you feloniously violated Louisiana Act Number 176 of 1969 in that you participated in the aforementioned riot which resulted in the deaths of Ralph Hancock and Dewayne Wilder against the provisions of La.R.S. 14:329.1, La.R.S. 14:329.7. More specifically, the above violations occurred in that you willfully endeavored and procured others present to create and participate in a public disturbance involving others acting together and in concert by urging and procuring them to take over the city of Baton Rouge by blocking the 1300 block of North Boulevard with parked vehicles and a line of human beings, involving you and others, across North Boulevard, which was done without a permit, thereby creating a confrontation with police *1006 authorities and physically attacking said authorities when they attempted to remove said obstruction causing a public disturbance from which the deaths of Ralph Hancock and Dwayne Wilder resulted, all in violation of the aforementioned provisions of law and additionally specifically in violation of La.R.S. 14:329.4(1) & (2). * * *"
The bill of information charging defendant with "rioting" was read to the jury. The jury was repeatedly instructed by the trial judge that the defendant was on trial for but one crime:
"* * *
"Rioting under Louisiana law is a crime. The cited act provides that violation thereof may occur in several ways:
"* * *
"I have broken it down into three categories, and I tell you ladies and gentlemen this. This is not to mislead you. There is only one charge.
"* * *
"[Jury foreman]: In other words we have three sheets of paper.
"The Court: That's right and you must address  he's charged in three ways and I did it  I did not want you to think that he was charged with three crimes because he's charged with committing a crime, i. e., rioting, in three separate manners. But you must consider all of 
"* * *
"[Defense attorney]: No, what I was getting at, according to what the foreman was saying and the way I read it is  whether or not the  based  they only required to bring back one verdict?
"The Court: That's correct 
"  I hope I haven't confused you any more and believe me, I didn't intend to. We realize we throw quite a bit at you and there's only one crime which can be committed under the allegation in three ways."
The theory that the defendant was prosecuted for one crime, i. e., rioting, which could be committed by doing any one of several acts was further reinforced in the jurors' minds by similar statements in the prosecutor's closing argument.
The written lists of verdicts given to the jury, however, did not correspond to the single crime theory. Although the bill of information contained just one count, and although the trial judge and prosecuting attorney conducted the entire trial as though the defendant were being charged with a single offense, the trial judge gave the jury three separate lists of responsive verdicts. Moreover, these lists did not correspond to the three separate criminal acts referred to in the information, i. e., participating in a riot in which the death of any person occurs, inciting to riot in which the death of any person occurs, and wrongful use of property in which the death of any person occurs. Instead, the verdicts were listed under the following heads: guilty of participating or inciting a riot; guilty of participating or inciting a riot in which the death of any person occurred; and guilty of wrongful use of public property in which the death of any person occurred. In all, the trial judge listed thirteen responsive verdicts under the three headings and delivered them to the jury on three separate sheets of paper:
First sheet of paper:
1. Guilty or [sic] participating or inciting a riot;
2. Guilty of an attempt to participate or incite a riot;
3. Not Guilty.
Second sheet of paper:
1. Guilty of participating or inciting a riot in which the death of any person occurred;
2. Guilty of an attempt to participate or to incite a riot in which the death of any person occurred;
3. Guilty of participating or inciting a riot in which serious bodily injury occurred;
4. Guilty of an attempt to participate or incite a riot in which serious bodily injury occurred;
5. Not Guilty.
*1007 Third sheet of paper:
1. Guilty of wrongful use of public property in which the death of any person occurred;
2. Guilty of an attempt to wrongfully use public property in which the death of any person occurred;
3. Guilty of wrongful use of public property in which serious bodily injury occurred;
4. Guilty of an attempt to wrongfully use public property in which serious bodily injury occurred.
5. Not Guilty.
The defendant did not object to the lists of verdicts.
The jurors perceived the evident inconsistency between the court's instructions stressing the single crime theory of prosecution and the arrangement of the written verdicts into three separate crime categories. At one point they emerged from their deliberations for instructions as to whether they were required to reach a separate decision in all three categories. Although the judge reiterated that the defendant was charged with a single offense of rioting, he emphatically insisted that the jury return three verdicts, one to be selected from each of three written lists. The colloquy between the judge and the jury foreman was as follows:
"[Jury foreman]: We found ourselves in agreement on one point.
"THE COURT: But, did you address all three manners in which he is alleged to have violated the act? You must address all three manners. Remember, he is charged with violating an act by participating  you must decide that. You must decide did he violate the act by inciting. You must decide did he violate the act by wrongful use of public property.
"[Jury foreman]: All three or any one of them?
"THE COURT: All three. You must address all three of them in your decisional process.
"[Jury foreman]: Should we approach one  the first one you named  participating  should we address that one and agree, would it be necessary then to address the other two as to agree or disagree or 
"THE COURT: Yes, I follow your question. Yes.
"[Jury foreman]: In other words we have three sheets of paper.
"THE COURT: That's right and you must address  he's charged in three ways and I did it  I did not want you to think that he was charged with three crimes because he's charged with committing a crime i. e. rioting, in three separate manners. But, you must consider all of 
"[Jury foreman]: Should we all agree on one and not the other two or two and not the other one  then, we must do it that way. We can't just give you one page with a verdict on it?
"THE COURT: That is correct. You must make that decision.
"[Jury foreman]: The other two  we have to find him guilty or not guilty on the other ones as well?
"THE COURT: Right."
After further deliberations, the jury returned three separate verdicts: guilty of participating in a riot (a misdemeanor carrying a penalty of up to a $500 fine or six months imprisonment); guilty of participating in a riot in which the death of any person occurs (a felony carrying a penalty of up to twenty-one years imprisonment at hard labor); and guilty of wrongful use of public property in which the death of any person occurs (a felony carrying a penalty of up to twenty-one years imprisonment at hard labor). The jury also returned two verdicts of acquittal: not guilty of inciting to riot; and not guilty of inciting to riot in which the death of any person occurs. The trial judge received and recorded all three of the guilty verdicts.
We set to one side the question of whether it was proper to try the defendant upon a single charge of rioting which could be committed by one of several criminal *1008 acts.[1] Since the defendant did not object on this ground to the form of the bill of information or the jury's instructions, we assume for purposes of our review that the single crime hypothesis is correct.[2] Furthermore, it would be grossly unfair, after the defendant has been deprived of his right to sever multiple offenses[3] and the opportunity to assert a pretrial plea of double jeopardy,[4] to uphold an otherwise invalid conviction by permitting the state on appeal to exchange its trial court position for the more stable footing of a pluralistic prosecution theory.
Assuming, then, that the defendant correctly was accused and tried on the proposition that "rioting" is a single crime which may be committed in several ways, it is readily apparent that the verdicts received and recorded by the trial judge were improper. By his instructions and arrangements of the verdicts the trial judge inadvertently prevented the jury from clearly expressing an agreement on one general verdict in the case. Instead, the jury was forced to return three special verdicts or answers to special interrogatories without reaching the ultimate decision within its prerogative. The trial judge unwittingly usurped the role of the jury by making the final decision of which general verdict should be returned. These improprieties are of both statutory and constitutional dimensions.
The Code of Criminal Procedure provides that a verdict must clearly convey both the fact that the jury reached an agreement and the exact information as to the particular verdict upon which the jury agreed.[5] *1009 La.C.Cr.P. art. 810. If the verdict is incorrect in form or is not responsive to the indictment the court must refuse to receive it and must remand the jury with the necessary oral information. La.C.Cr.P. art. 813. This Court has held that it is the judge's duty to look after the form and substance of the verdict so as to prevent a doubtful or insufficient finding from passing into the record of the court. State v. Owens, 193 La. 505, 190 So. 660 (1939).
There is no authority in our law for special verdicts in criminal cases. The Code of Criminal Procedure provides basically for only three kinds of general verdicts which may be rendered in response to the indictment or bill of information: guilty as charged; guilty of a lesser and included grade of the offense charged; and not guilty. La.C.Cr.P. arts. 814, 815.
Special verdicts are not favored in criminal cases because of their restrictive effects upon the jury. Special verdicts impair or wholly abrogate the defendant's right to a general verdict, which is an important element of the constitutional right to a jury trial.[6]See, United States v. Gernie, 252 F.2d 664 (2d Cir.), cert. denied, 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958). The danger inherent in the use of special verdicts in criminal trials is that a reluctant juror might be coerced into reaching a pre-determined result. Although special verdicts may guide a jury toward a logical result, there is grave danger that special verdicts in criminal cases would prevent the jury from performing its most important, uniquely human function, of providing the defendant with a safeguard against arbitrary, unchecked governmental power through community participation in the determination of guilt or innocence. See, Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); In re Dino, 359 So.2d 586, 602 (La.1978). In United States v. Spock, 416 F.2d 165 (1st Cir. 1969), the Court of Appeal described how a juror might be led to a different result by use of special verdicts than he would have reached unfettered:
"* * * There is no easier way to reach, and perhaps force, a verdict of guilty than to approach it step by step. A juror, wishing to acquit, may be formally catechized. By a progression of questions each of which seems to require an answer unfavorable to the defendant, a reluctant juror may be led to vote for a conviction which, in the large, he would have resisted. The result may be accomplished by a majority of the jury but the course has been initiated by the judge, and directed by him through the frame of the questions.
"It may be said that since the law should be logical and consistent, if the questions were proper in substance this would be a desirable rather than an undesirable result. We agree, however, with the distinction made by L. Hand, J., concurring in Skidmore v. Baltimore & O. Ry., 2 Cir., 1948, 167 F.2d 54, 70, cert. denied, 335 U.S. 816, 69 S.Ct. 34, 93 L.Ed. 371, when speaking in favor of special verdicts in civil cases.
"`I should like to subject a verdict, as narrowly as was practical, to a review which should make it in fact, what we *1010 very elaborately pretend that it should be: a decision based upon law. In criminal prosecutions there may be, and in my judgment there are, other considerations which intervene to make such an attempt undesirable.'
"Uppermost of these considerations is the principle that the jury, as the conscience of the community, must be permitted to look at more than logic. Indeed, this is the principle upon which we began our discussion. If it were otherwise there would be no more reason why a verdict should not be directed against a defendant in a criminal case than in a civil one. The constitutional guarantees of due process and trial by jury require that a criminal defendant be afforded the full protection of a jury unfettered, directly or indirectly. See Morris v. United States, 9 Cir., 1946, 156 F.2d 525."
See also Heald v. Mullaney, 505 F.2d 1241 (1st Cir.), cert. denied, 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1974); United States v. James, 432 F.2d 303, 307-308 (5th Cir.) cert. denied, 403 U.S. 906, 91 S.Ct. 2214, 29 L.Ed.2d 682 (1970); Gray v. United States, 174 F.2d 919 (8th Cir.) cert. denied, 338 U.S. 848, 70 S.Ct. 90, 94 L.Ed. 519 (1949); United States v. McCracken, 488 F.2d 406, 418-19 (5th Cir. 1974).
Applying these principles to the instant case we conclude that by receiving and recording the verdicts the trial judge committed reversible error for several reasons. The verdicts were not responsive to the single charge of rioting, upon which the defendant was tried. The only responsive verdicts to such a charge would have been: guilty as charged of rioting where, as a result, the death of any person occurs; guilty of rioting where, as a result, serious bodily injury or over $5,000 in property damage occurs; guilty of rioting; guilty of attempted rioting; not guilty. Consequently, the verdicts were incorrect because they did not clearly indicate that the jury had agreed upon one of the responsive verdicts which could be rendered where the defendant is tried on a charge of rioting. Instead, the verdicts amounted to nothing more than special verdicts, leaving to the judge the selection of a general responsive verdict upon which to base the conviction and sentence.
The special verdicts set forth in the three written lists in this case were particularly pernicious because some of the lesser included misdemeanor verdicts were presented to the jury on a separate form, segregated from the felony verdicts of the same genus, and another was omitted altogether. The misdemeanor verdict of wrongful use of public property was omitted from the responsive verdicts lists entirely. The jury was not allowed to consider the misdemeanor offense of participating in a riot as a responsive verdict to the felony offense of participating in a riot in which the death of any person occurs. La.C.Cr.P. art. 815; State v. Douglas, 278 So.2d 485 (La.1973). Instead, the jury was required to consider the felony participating offense counterposed only by the alternative verdicts of not guilty and attempted felony participating. In criminal cases special verdicts themselves are inimical to the policies underlying the jury trial guarantee, but an arrangement of special verdicts which prevents the ready consideration of all the permissible verdicts responsive to the charged offense goes further and impinges even the defendant's rights to fair trial and due process.
For the reasons assigned, the defendant's conviction and sentence are reversed and the case is remanded to the district court for a new trial.
SANDERS, C. J., dissents.
NOTES
[1] It appears certain, however, that it was in fact incorrect to charge and try the defendant for the single, all-inclusive crime of "Rioting." The legislature by Act 176 of 1968, extant as La.R.S. 14:329.1-329.8, set forth its intention to prohibit five distinct kinds of conduct, viz., inciting to riot, participating in a riot, failure to comply with a lawful command to disperse, wrongful use of public property, and interference with the educational process. A definition of "riot" is set forth in the act, and certain separate acts relating to a "riot" are prohibited, but the word "riot" is not used to denominate a crime. Furthermore, three of the offenses have separate common-law crime derivations, W. Clark & W. Marshall, A Treatise on the Law of Crimes 586-595 (7th ed. M. Barnes 1967); R. Perkins, Perkins on Criminal Law, 403-408 (2d ed. 1969), and the definitions of two others have no connection with the term "riot." It is evident, therefore, that the legislature sought to proscribe in one act several different endemic American crimes of the late 1960's. The aim of the legislation was not merely to facilitate the charging of one basic crime having divergent methodologies. Nor does the fact that the separate crimes have common penalties or the circumstance that some share a common definitional element militate in favor of a single crime hypothesis. For example, the separate crimes of aggravated rape La.R.S. 14:42, and simple rape, La.R.S. 14:43, stem from a single statutory definition, La.R.S. 14:41-41.1, and many criminal statutes make use of a shared penalty. See, e. g., La.R.S. 32:57; La.R.S. 40:966-970. Any doubt as to these conclusions must be resolved against extension of articles of the criminal code by analogy so as to create crimes not provided for therein. La.R.S. 14:3.
[2] For the reasons discussed in the previous footnote, we do not believe that a separate crime of "rioting" exists. See also, State v. Williams, 354 So.2d 562 (La.1978); State v. Bell, 346 So.2d 1090 (La.1977). Such an error in the bill of information is clearly an error patent on the face of the record. La.C.Cr.P. art. 920(2); State v. Raby, 259 La. 909, 253 So.2d 370 (1971). However, because the information did make reference to the three individual crimes, we choose not to rest our decision solely on this somewhat technical basis.
[3] La.C.Cr.P. art. 495.1.
[4] The Fifth Amendment of the United States Constitution"protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). See also, Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); State v. Suire, 319 So.2d 347 (La.1975); State v. Didier, 262 La. 364, 263 So.2d 322 (1972); State v. Bonfanti, 262 La. 153, 262 So.2d 504 (1972). However, regardless of how the offenses are joined for trial, it is clear that the substantive guarantees against double jeopardy will not be affected.
[5] La.C.Cr.P. art. 810 provides:

"When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury.
"The foreman of the jury shall deliver the verdict to the judge in open court."
[6] Statement of Mr. Justice Black and Mr. Justice Douglas on the Rules of Civil Procedure amendments:

"* * * Such devices are used to impair or wholly take away the power of a jury to render a general verdict. One of the ancient, fundamental reasons for having general jury verdicts was to preserve the right of trial by jury as an indispensable part of a free government. Many of the most famous constitutional controversies in England revolved around litigants' insistence, particularly in seditious libel cases, that a jury had the right to render a general verdict without being compelled to return a number of subsidiary findings to support its general verdict. Some English jurors had to go to jail because they insisted upon their right to render general verdicts over the repeated commands of tyrannical judges not to do so. * * * A scrutiny of the special verdict and written interrogatory cases in appellate courts will show the confusion that necessarily results from the employment of these devices and the ease with which judges can use them to take away the right to trial by jury." D.C., 31 F.R.D. 618-19 (1963).