394 So.2d 1218 (1981)
STATE of Louisiana
v.
Dudley Patrick BEAVERS.
No. 80-KA-1786.
Supreme Court of Louisiana.
February 9, 1981.
*1220 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph Roy, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
*1221 Murphy Bell, Baton Rouge, for defendant-appellant.
STOKER, Justice Ad Hoc.[*]
The defendant-appellant in this case appeals from a conviction of the offense of participating in a riot, a violation of the Louisiana Criminal Code as contained in LSA-R.S. 14:329.1 and 14:329.7. Appellant Dudley Patrick Beavers was before this court when he appealed a previous conviction. We reversed the previous conviction and sentence in State v. Beavers, 364 So.2d 1004 (La.1978). We remanded the case to the district court for a new trial. After the remand the appellant was again tried, was found guilty by the jury and sentenced to twenty years imprisonment at hard labor. It is from this conviction and sentence that appellant now appeals. In the previous appeal we characterized this case as:
"... one of the so-called `Black Muslim cases' which have been reviewed by this Court." See State v. Bell, 315 So.2d 307 (La.1975), 346 So.2d 1090 (La.1977); State v. Williams, 354 So.2d 562 (La.1978); State v. Eames, 365 So.2d 1361 (La.1978).
We said in 364 So.2d 1004:
"These cases arose out of a riot which erupted in Baton Rouge on January 10, 1972. On that day members of the Black Muslim sect parked several vehicles across an intersection of public streets. When police attempted to remove the vehicles and disperse the crowd, violence broke out, resulting in the serious bodily injury of a reporter and the deaths of two police officers and three black demonstrators."
Appellant Beavers was first tried in 1977. The reason for our reversal and remand for a new trial in 364 So.2d 1004 was the use by the trial judge of special verdicts. After remand the bill of information was amended. The pertinent parts of the amended bill read as follows:
"... Dudley Patrick Beavers on or about the tenth (10th) day of January, 1972, committed the offense of rioting by participating, violating Louisiana Revised Statutes 14:329.1, 14:329.7, in that you participated in a riot which resulted in the deaths of Ralph Hancock and Dewayne Wilder against the provisions of La.R.S. 14:329.1 [and] 14:329.7. More specifically, the above violations occurred in that you willfully participated in a public disturbance involving you and others acting together and in concert by blocking the 1300 block of North Boulevard with parked vehicles and a line of human beings, involving you and others, across North Boulevard, thereby creating a confrontation with police authorities and physically attacking said authorities when they attempted to remove said obstructions causing a public disturbance from which the deaths of Ralph Hancock and Dewayne Wilder resulted, all in violation of the aforementioned provisions of law, and additionally, specifically in violation of the aforementioned provisions..."
The Louisiana Criminal Code provisions under which the charges were framed, LSA-R.S. 14:329.1 and 14:329.7, provide:
"§ 329.1 Riot
A. A riot is a public disturbance involving an assemblage of three or more persons acting together or in concert which by tumultuous and violent conduct, or the imminent threat of tumultuous and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property.
"§ 329.7 Punishment
A. Whoever willfully is the offender or participates in a riot, or is guilty of inciting a riot, or who fails to comply with a lawful command to disperse, or who is guilty of wrongful use of public property, or violates any other provision hereof shall be fined not more than five *1222 hundred dollars or be imprisoned not more than six months, or both.
B. Where as a result of any willful violation of the provisions of R.S. 14:329. 1-14:329.8 there is any serious bodily injury or any property damage in excess of five thousand dollars, such offender shall be imprisoned at hard labor for not more than five years.
C. Where, as a result of any willful violation of the provisions of R.S. 14:329. 1-14:329.8, the death of any person occurs, such offender shall be imprisoned at hard labor for not to exceed twenty-one years."
Appellant makes numerous assignments of error. Both appellant and the State have grouped various assignments together for treatment in their briefs submitted to this court. We will deal with them in the same groupings.
ASSIGNMENTS OF ERROR NUMBERS 1, 2, 4, 6, and 7
Assignment Number 1.
In appellant's brief with reference to assignments 1, 2, 4, 6, and 7 counsel states that the "major thrust of these assignments of error is directed toward the obvious unconstitutionality of the Riot Statute ..." Other than the matters to be discussed below counsel has directed no specific arguments to the issue of constitutionality of the statutes under which defendant-appellant was convicted. The constitutionality of these statutes has been upheld by this court. State v. Douglas, 278 So.2d 485 (La. 1973). See State v. Williams, 354 So.2d 562 (La.1978) and Douglas v. Pitcher, 319 F.Supp. 706 (E.D.La.1970).
In assignment of error number 1 appellant urges that the bill of information does not charge a crime cognizable under Louisiana law. Appellant's theory is that he has been charged simply with rioting under LSA-R.S. 14:329.1. Appellant argues that this provision of law merely defines a riot but it does not proscribe conduct. Then appellant argues that LSA-R.S. 14:329.7 prescribes various penalties for proscribed conduct set forth in LSA-R.S. 14:329.2-329.-6.
There is no merit to assignment number 1. Beavers was not charged with "rioting" under LSA-R.S. 14:329.1 alone. He was charged under section 329.1 and section 329.7. The latter section provides in pertinent part as follows:
"A. Whoever willfully is the offender or participates in a riot ... or violates any other provision hereof shall be fined not more than five hundred dollars or be imprisoned not more than six months, or both.
* * * * * *
"C. Where, as a result of any willful violation of the provisions of R.S. 14:329.1-14:329.8,[1] the death of any person occurs, such offender shall be imprisoned at hard labor for not to exceed twenty-one years."
Clearly under the provisions of section 329.7 anyone who participates in a riot (as riot is defined in section 329.1) is guilty of a crime. The authorized punishment varies with the seriousness of the consequences or results of the riot as specified in subsections A, B, and C of Section 329.7. A riot is defined in section 329.1 in such terms that a reasonable person would be able to understand the prohibited conduct. A person is given notice that if he engages in such conduct he commits a crime for which a punishment is provided.
Therefore, appellant Beavers was charged with a crime cognizable under Louisiana law.
Assignment Number 2.
Assignment number 2 presents a number of arguments. One position is somewhat similar to that urged in assignment number 1 in that appellant argues that there is no such crime as "Participating in a Riot". *1223 Appellant further contends that the Amended Bill of Information is duplicitous in that it purports to charge him with the violation of two statutes because of a single course of conduct arising out of the incident of January 10, 1972.[2] Assignment number 2 also raises notions of double jeopardy and collateral estoppel based on the contention that appellant has already been acquitted of the criminal conduct set forth in the Amended Bill of Information in 354 So.2d 1004.
In appellant's first trial the Bill of Information charged him with rioting by inciting, participating and wrongful use of public property in violation of LSA-R.S. 14:329.1, 329.2, 329.4(1), (2) and 329.7. The trial judge furnished the jury with three separate verdict sheets as described in 364 So.2d 1004. The sheets purported to contain various responsive verdicts the jury could return. We held that the verdicts listed on the sheets were special verdicts or special interrogatories and the trial judge committed reversible error in receiving and recording them. The verdicts were not responsive to the single charge of rioting upon which the defendant was tried. Also the procedure followed by the trial judge prevented the jury from reaching a general verdict (which was within its prerogative) and that the trial judge selected a general verdict based on the answers to the interrogatories. We reversed the conviction and sentence and remanded the case for a new trial.
Two of the three sheets handed to the jury referred to participating or inciting a riot. (One related to the misdemeanor form of the crime and the other to the felony forms of the crime.) The third sheet related to wrongful use of property, LSA-R.S. 14:329.4. In following the verdict forms the jury found Beavers guilty of participating in a riot in both the misdemeanor and felony forms, and guilty of wrongful use of property but not guilty of inciting a riot.[3] We dealt with appellant's first conviction and sentence based on these special verdicts in 364 So.2d 1004 and reversed, holding that the trial judge committed error in receiving and recording the special verdicts. In our opinion handed down in the first appeal we set aside and did not reach the question of whether it was proper to try the defendant on a charge of rioting which could be committed by one of several criminal acts because the defendant did not object to the form of the bill of information or the jury's instructions. For purposes of that review we assumed that the single crime hypothesis was correct although we expressed doubts as to its validity in footnotes.[4] After our reversal and remand the bill of information was amended as noted above. We do not have before us now the same form of charge as was involved in the prior appeal.
The double jeopardy violation alleged by defendant is grounded upon the assumption that this Court's reversal of defendant's original conviction left intact the jury's special verdict acquitting him of inciting to riot. The flaw in this logic stems from the fact that defendant was originally charged with the single offense of rioting. *1224 Finding that the five "special verdicts" returned by the jury were not responsive to this charge, this Court reversed defendant's conviction and remanded the case for a new trial. Since the single conviction of "rioting" was reversed at defendant's behest, the jury's incidental verdict acquitting defendant on charges of inciting could not form the basis for a claim that the accused's retrial was barred by the constitutional prohibition against twice being placed in jeopardy for the same offense. LSA-C.Cr.P. art. 591; State v. Jackson, 332 So.2d 755 (La.1976).
In any event, defendant was not charged with inciting to riot at his trial on remand. For this reason, the accused's present double jeopardy claim is grounded upon the mistaken assumption that inciting to riot and participating in a riot are one and the same offense. LSA-R.S. 14:329.2 specifically defines inciting to riot as "the endeavor by any person to incite or procure any other person to create or participate in a riot." Under this definition, an accused may incite a riot without actually participating in one; likewise, under LSA-R.S. 14:329.7, an accused might participate in a riot without procuring others to do so. See State v. Douglas, supra. Since each of these offenses requires proof of an additional fact that the other does not, the prosecution of defendant on charges of participating in a riot would not violate the double jeopardy clause even if the defendant had actually been acquitted on an earlier "inciting" charge. Brown v. Ohio, 432 U.S. 161, 167, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); State v. Doughty, 379 So.2d 1088 (La.1980); State v. Solomon, 379 So.2d 1078 (La.1980).
We find no merit in assignment of error number 2.
Assignment Number 4.
The arguments advanced in appellant's brief under assignment of error number 4 are a repetition of the arguments put forward under the assignment discussed above. On appellant's behalf it is urged that there is no such crime as rioting. Also it is urged that since the jury in the first trial found him not guilty of inciting a riot, he cannot be tried now for the "rioting". These arguments have been addressed above and are without merit. Appellant also alleges in his assignment number 4 that prosecution under the Amended Bill of Information has prescribed under the articles on limitations. LSA-C.Cr.P. art. 577 et seq. We find no merit in this argument.
Assignment Number 6.
In this assignment defendant-appellant urges that as a factual matter he did not violate the statute even if the statute is valid and he was validly charged. Additionally, defendant-appellant relies on collateral estoppel. On January 10, 1972, members of the Black Muslim sect parked several vehicles across an intersection of public streets. When police attempted to remove the vehicles and disperse the crowd, violence broke out, resulting in the serious bodily injury of a reporter and the deaths of two police officers and three black demonstrators.
Testifying at his trial on remand, defendant stated that he and other members of the Black Muslim group had traveled to Baton Rouge to inquire into the jailing of three fellow Muslims on charges of unauthorized solicitation. On January 10, 1972, the group met in front of the Temple Theater in Baton Rouge. Efforts by newsmen to cover this meeting ended with the beating of television reporter Bob Johnson.[5] Police then moved in to disperse the group, who had formed a line across North Boulevard. Defendant admitted participating in the attempt to block North Boulevard, but claimed that he left the scene as soon as the first order to disperse was given. Defendant further denied any participation in the ensuing scuffle between police and others of the Black Muslim group. Following the incident, defendant fled to Houston, Texas, where he was apprehended in late 1975.
*1225 Appellant contends that he committed no act at the scene except to stand in line prior to the ensuing violence. Beavers testified that, although he stood in line in the attempt to block North Boulevard, he left when ordered to do so by the police. He claimed he was almost a block away when the shooting began. Appellant Beavers argues that assuming that he told the truth, and assuming he was validly charged, the State is foreclosed from bringing a second prosecution growing out of a single course of conduct.
We do not consider that the case would be altered even if appellant's version of the facts should be accepted. Considering the definition of rioting contained in LSA-R.S. 329.1, leaving upon police request after having participated in a riot which resulted in deaths would not make defendant-appellant any less culpable. The time when he, defendant, left the scene is of no moment once it is established that he had participated in the start of the affair.
We see no merit to assignment of error number 6 insofar as it is based on collateral estoppel as laid down in State v. Cain, 324 So.2d 830 (La.1975). Appellant's position here is substantially the same as the double jeopardy argument which we have addressed above.
Assignment Number 7.
In his brief before this court appellant concedes that assignment of error number 7 is no more that a cumulation of the arguments advanced under assignments numbered 1, 2, 4 and 6.

ASSIGNMENTS OF ERROR NUMBERS 3 and 11
By assignment number 3, defendant contends that the trial court erred in denying his pretrial motion for a change of venue on grounds that widespread publicity of the January 10, 1972, riot and the subsequent arrests and trials of ten Black Muslims allegedly involved had generated such feelings of prejudice in the public mind as to deny him a fair and impartial trial.
A lengthy hearing on defendant's change of venue motion was begun on March 3, 1980. At this hearing the defense produced fourteen witnesses, including representatives of Baton Rouge's three television stations; representatives of the Capital City Press; five attorneys who had served as counsel in previous Black Muslim trials arising out of the January 10th riot; the mayor of Baton Rouge, Woodrow W. Dumas; and a professor of clinical psychology from Louisiana State University, Dr. Ralph Dreger.
The testimony of these witnesses was substantially similar to that presented in the earlier Black Muslim cases and considered by this Court in State v. Bell, 346 So.2d 1090 (La.1977) and State v. Williams, 354 So.2d 562 (La.1978). Here, as in those cases, witnesses from the news media testified that news coverage of the incident and its immediate aftermath was extensive, and that Baton Rouge citizens appeared quite aroused and racially divided at the time. However, according to these media witnesses, the Black Muslim incident lost its priority news classification following the original trial of the accused's co-defendants in April, 1973. Since that time, publicity concerning the trials of various Black Muslim defendants has been much less intense. Only witnesses who had previously served as counsel for one or more of these Black Muslim defendants felt that Beavers would have a difficult time obtaining a fair trial in Baton Rouge in 1980. Despite this apparent suggestion that the lapse of time since the incident would allow the accused to receive a fair trial, the trial judge refused to rule on defendant's motion until voir dire examination revealed the nature and extent of any possible bias against the accused.
Evidence adduced during voir dire examination failed to establish clearly the existence of such prejudice in the collective mind of the community as to make a fair trial impossible. LSA-C.Cr.P. art. 622; State v. Smith, 340 So.2d 222 (La.1976); State v. Clark, 340 So.2d 208 (La.1978); State v. Felde, 382 So.2d 1384 (La.1980). Of thirty prospective jurors called for examination, only two were excused for cause on grounds having anything to do with defendant's motion.
*1226 The present case was not tried until March of 1980 by which time the public's familiarity with the case had faded to an extent far beyond that which existed at the time of co-defendant Bell's trial in 1976 (State v. Bell, 346 So.2d 1090). The ameliorative effects which this passage of time had upon the accused's ability to receive a fair trial were vividly demonstrated by the ease with which jury selection was completed. In State v. Bell, supra, one hundred fifty-four potential jurors were excused because they indicated that they had a fixed opinion in the case, or because they expressed some doubt about whether they could put any past publicity out of their minds. In the present case only two jurors were excused for these reasons. Otherwise, the testimony presented here in support of defendant's request is essentially the same as that considered by this Court in State v. Bell, supra and State v. Williams, supra. Here, as in those cases, it cannot be said that the trial court abused its discretion in denying defendant's motion for a change of venue. State v. Matthews, 354 So.2d 552 (La.1978); State v. Sonnier, 379 So.2d 1336 (La.1980).
Through assignment of error number 11, appellant complains of the failure of the court to grant a new trial on the same grounds which was the basis of the pretrial motion for a change of venue. As proof of the widespread prejudice which appellant contends prevented him from receiving a fair and impartial trial he points to the actions of two jurors when the jury was polled following the rendition of the verdict. These two jurors voted not guilty in the jury room, but when polled and asked if the guilty verdict was their verdict, they answered "yes". Appellant claims that these two jurors changed their vote in open court out of fear of the public. We do not know why these two jurors indicated they voted guilty when they actually had voted not guilty. We cannot infer a fear inspired by such public feelings that would justify granting a new trial to enable the defendant to be accorded a change of venue.
We find no merit in assignments of error numbers 3 and 11.
ASSIGNMENT OF ERROR NUMBER 5
In this assignment, defendant claims that the trial court erred in permitting the prior testimony of an unavailable state witness to be introduced at his trial on remand.
On Friday, January 7th, some three days prior to the incident alleged herein, members of the Black Muslim sect held a "community meeting" at the Temple Theatre Roof Garden. At defendant's original trial, the state called a Mr. Frank Millican to testify as to the events which transpired at this meeting. According to Millican, a Black Muslim leader spoke at this meeting and urged the audience to meet with him in front of the Temple Theatre on Monday, January 10th at noon. While warning his audience not to bring any weapons, the speaker claimed that "he was going to show them how to beat the city fathers and take Baton Rouge and give it back to the black people." However, Millican did not recall seeing the defendant at this meeting.
At the time of defendant's remand trial, Mr. Millican was attending to business in Washington, D. C., and therefore, failed to answer his subpoena. Defense counsel did not dispute the unavailability of this witness or the relevance of his testimony to issues presented at trial, but instead argued that since the charge against his client was no longer "inciting to riot," the admission of Millican's transcribed testimony would effectively deprive the defendant of his right to confront the witness against him.
Again this contention is based upon the inaccurate characterization of the original charge filed against defendant as one of "inciting to riot". The accused was originally charged with the all-encompassing offense of "rioting," an offense which, in the state's theory, included both averments of inciting to riot and participating in a riot. While the defendant's second trial involved only a participation allegation, it is clear that this charge also formed part of the original prosecution.
More serious questions regarding the sufficiency of the state's proof of Mr. Millican's *1227 unavailability, as well as the propriety of admitting the remarks of the Black Muslim leader made on January 7th have not been urged by the defense herein. In any event, the defense was not prejudiced by the admission of Millican's testimony since similar statements were attributed to the Muslim leader by other state witnesses.
ASSIGNMENT OF ERROR NUMBER 8
In this assignment, defense counsel argues that the trial court erred in refusing to declare a mistrial in face of repeated attempts by the state to suggest that defendant was directly responsible for the beating of news reporter Bob Johnson. In support of this contention, counsel's assignment notes only one instance in which such a suggestion was allegedly made, that being the following remarks of prosecutor Ralph Roy during closing argument:
"[Muslim leader Upton] talked about white devils killing people and, you know, that kind of talk to such an extent that Maurice Cockerhamagain, a man who was doing a jobworked for the news mediaBob Johnson. Those people weren't cops. Those people didn't go over there to provoke anything. They had their cameras. They were trying to publicize the incident as is their job. Well, they were literally run off and beaten and, you know, by who? I don't know."
At trial these statements elicited an immediate, two-pronged defense objection: the defense first argued that these remarks were designed to inflame juror sensibilities by attributing responsibility for Johnson's injuries to defendant; alternatively, defendant claimed Roy's allusion to the Johnson beating constituted an impermissible other crimes reference. LSA-C.Cr.P. art. 770; State v. Prieur, 227 So.2d 126 (La. 1973). Both objections were overruled and Mr. Roy continued this line of argument as follows:
"As I said, at one point not too far removed from the time that the police officers got there, Bob Johnson and Maurice Cockerham were attacked by I don't know who. I don't claim to know. And I want to remind you that there is no charge here involving Bob Johnson much less that this defendant is charged with having done anythinghaving anything to do with Bob Johnson. I mention this for two reasons. First of all, it did happen right at the time of this offense or right before it. And secondly, I offer it because this was at high noon or a little past in broad daylight, and I say to you that in the line of human experience and practical everyday living that it's hard to believe that anyone around there in that general area would not have been knowledgeable on this pursuit and beating."
Contrary to defendant's assertions, the prosecutor's remarks painted an accurate picture of evidence adduced at trial. Maurice Cockerham, a television news editor, testified that he heard Upton speaking to a gathering crowd from the roof of a Cadillac which had been used to block North Boulevard. According to this witness, Upton referred to whites as white devils and as serpents and made several references to killing whites which Upton said was required by their teachings. Upton also told the crowd, "We have come here today to meet the white devil and kill him." He then turned and pointed at Cockerham and two other newsmen (including Johnson) saying, "There are three of the white devils here today, but there will be more later." In Cockerham's account, these remarks were made at approximately 12:30 P.M. Shortly thereafter, the newsmen attempted to leave the scene, but their path was blocked by one of the Muslims. As the three continued their efforts to get away, they were set upon by the crowd, and Johnson, who was unable to escape, was severely beaten. After departing the scene, Cockerham contacted the police whose arrival minutes later led to the violent confrontation which resulted in five deaths.
Under this version of the facts, defendant was not directly implicated in the beating of Mr. Johnson, but his knowledge of the crowd's violent propensities could certainly be implied. In view of the fact that defendant *1228 claimed to be a law-abiding citizen who withdrew from the scene in compliance with a police order to disperse, evidence that he had remained on the scene even after the violent beating of Mr. Johnson gave rise to a clear inference of willful participation in an affair which not only threatened injury but had already produced injury.
Under these facts, the confrontation between the Muslims and authorities followed quite closely upon the heels of Johnson's injury and in fact, formed with it, one continuous transaction. As such, evidence of Johnson's injury was properly admissible as part of the res gestae of the January 10th offense. LSA-R.S. 15:448; State v. Joseph, 341 So.2d 861 (La.1977); State v. Tornabene, 337 So.2d 214 (La.1976).
We find no merit in appellant's assignment of error number 8.
ASSIGNMENT OF ERROR NUMBER 9
By this assignment, defendant argues that the trial court committed reversible error in allowing the prosecution, during closing argument, to urge the jury to view closely an unedited film of the North Boulevard incident, which had been admitted into evidence and viewed by the jury earlier during the trial.
The propriety of allowing a jury to view during deliberations a film which has been previously admitted into evidence presents an issue which has never been decided by this Court. Any problems which grow out of such a course of trial procedure need not be reached by us in this case. The jury was not in fact allowed to view the film in the jury room. When the jury foreman formally requested permission to view the film introduced at trial, the trial judge sided with the defense, ruling that a review of the film during jury deliberation would be improper. The judge instructed the bailiff to inform the jury that the court itself had denied the request.
For the foregoing reasons we find no merit to appellant's assignment of error number 9.

ASSIGNMENT OF ERROR NO. 10
By this assignment, defendant claims that the trial court erred in delivering its charges to the jury without first allowing the defense ample time for perusal of the charges. Counsel for the defendant claims that as a result he was forced to make a general defense objection to the charges in their entirety.
This contention is totally without merit. At the start of trial, the trial judge handed defense counsel a copy of his proposed instructions, stating that he would accept any suggestions for modification until such time as the charge was actually delivered. Defense counsel immediately objected to the trial court's proposed list of responsive verdicts, which included both attempted participation and rioting wherein property damage exceeding $5000 results. Counsel for the state acquiesced in both of these deletions, but the trial court inadvertently failed to strike the language referring to property damage.
Immediately prior to instruction, defense counsel was allowed to read the prosecution's copy of the proposed charges when it appeared that his own copy had been misplaced. At this point, counsel lodged a general objection to the court's entire charge. Such a groundless objection will not properly preserve an alleged error for review on appeal. LSA-C.Cr.P. art. 841; State V. Williams, 366 So.2d 1365 (La.1978); State v. Hysell, 364 So.2d 1300 (La.1978); State v. Petta, 359 So.2d 143 (La.1978). As concerns proposed jury instructions, the equitable argument that the trial court's haste prevented a proper objection has also been rejected. State v. Corey, 339 So.2d 804, 813 (La.1976); State v. Tarrance, 252 La. 396, 211 So.2d 304 (1968). In any event, defense counsel had abundant opportunity here to note his objections to the proposed charges.
For the first time in brief defendant-appellant raised the objection that the court had failed to charge the jury on specific intent. This objection would lack merit even if it had been timely raised. The trial court's failure to charge that specific *1229 intent is an element of the offense of riot participation was clearly proper. Only general intent is required for the crime of riot participation. As a result of the tumultuous gatherings which riot legislation proscribes, it is entirely foreseeable that great property damage and personal injury may occur, although not specifically intended. LSA-R.S. 14:10.
Appellant further argues under assignment number 10 that "rioting" is not legislatively defined to be criminal. The objection that "rioting" has not been made criminal by the legislature has already been discussed.
Lastly, defendant does not reurge his contention that the responsive verdict list was flawed by its reference to resulting "property damage". In any event, this language in no way prejudiced the defendant, since no finding of property damage was made by the trier of fact.
Assignment of error number 10 is without merit.
ASSIGNMENT OF ERROR NUMBER 12
By this assignment, defendant argues that the trial judge erred in denying his motion to recuse all judges of the Nineteenth Judicial District Court and in failing to recuse himself for purposes of the hearing on this motion.
In a handwritten motion filed on the date scheduled for his change of venue hearing, defense counsel claimed that his involvement in a federal case recently decided by the United States Fifth Circuit Court of Appeal had aroused feelings of bias and hostility toward him by judges of the Nineteenth Judicial District Court and that, for this reason, defendant Beavers would be unable to receive a fair trial before any of the judges of that court.
In support of this motion, defense counsel called Robert Williams, another Baton Rouge attorney, who had served as counsel for several plaintiffs in a recent federal case filed against the judges of the Nineteenth Judicial District Court. Murphy Bell, defendant's present counsel, was one of these plaintiffs. The precise nature of this suit was never disclosed. During the pendency of this federal suit, another judge of the Nineteenth Judicial District Court (not the trial judge in this case) told Williams that "they were, and I refer to the judges, `beat our butts in court on the federal court suit." Because of this remark and defense counsel's status not only as a plaintiff but also as lead counsel in the federal suit, it was argued that none of the judges of the Nineteenth Judicial District Court could properly sit in judgment on the instant charge. The trial judge denied the defendant's motion which is now reurged on appeal.
In pertinent part, LSA-C.Cr.P. art. 671 provides:
"In a criminal case a judge of any court, trial or appellate, shall be recused when he:
"(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial; ..."
Article 674 further provides, in relevant part:
"... If a valid ground for recusation is set forth in the motion, the judge shall either, recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675."
Under the jurisprudence interpreting there articles, a motion for recusal must set forth allegations of fact which state a statutory cause for recusation before the trial judge is required to refer the motion to another judge. State v. Collins, 288 So.2d 602 (La. 1974). Where, as here, the motion is based on mere conclusory allegations, the trial court does not err in refusing to refer the motion to another judge for hearing. State v. Maduell, 326 So.2d 820 (La.1976).
In the present case, the testimony, even that of Mr. Williams, provided absolutely no evidence of words or conduct which might indicate bias or prejudice on the part of the trial judge. Even as concerns the alleged bias of the other judges, Williams conceded that the remark about "beating his butt" was made humorously and in jest. Under *1230 these circumstances, the trial judge was correct in dismissing the accused's motion without referring the matter to another judge.
Thus, assignment of error number 11 is without merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
DIXON, C. J., specially concurring.
NOTES
[*] Judges CECIL C. CUTRER, JIMMY M. STOKER, and NED E. DOUCET, Jr., of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice JOHN A. DIXON, Jr., and Associate Justices PASCAL F. CALOGERO, Jr., JAMES L. DENNIS, and JACK C. WATSON.
[1] LSA-R.S. 14:329.1-329.8 were originally adopted by the Louisiana Legislature as sections of Act Number 176 of 1969. They were transferred into the Louisiana Criminal Code (Title 14 of the Louisiana Revised Statutes) in their present form with the section numbers indicated. There is no doubt as to the interconnexity of all the sections.
[2] This complaint is made on the basis that the conduct appellant was alleged to have committed on January 10, 1972, occurred prior to the adoption of Act 528 of 1975 by the Louisiana Legislature. This act repealed Articles 491 and 492 of the Code of Criminal Procedure and amended article 493 to permit joinder.
[3] In the Beavers' appeal, 364 So.2d 1004 at 1007 we summarized the jury's special verdicts as follows:

"After further deliberation, the jury returned three separate verdicts: guilty of participating in a riot (a misdemeanor carrying a penalty of up to $500 fine or six months imprisonment); guilty of participating in a riot in which the death of any person occurs (a felony carrying a penalty of up to twenty-one years imprisonment at hard labor); and guilty of wrongful use of public property in which the death of any person occurs (a felony carrying a penalty of up to twenty-one years imprisonment at hard labor). The jury also returned two verdicts of acquittal: not guilty of inciting to riot; and not guilty of inciting to riot in which the death of any person occurs. The trial judge received and recorded all three of the guilty verdicts."
[4] See footnotes 1 and 2 in 364 So.2d 1004 at 1008.
[5] Apparently, members of the Black Muslim sect were not directly responsible for the beating of Mr. Johnson. In any event, this incident forms no part of the present charges against defendant Beavers.