425 So.2d 745 (1983)
STATE of Louisiana
v.
Julian CHAISSON.
No. 81-KA-2293.
Supreme Court of Louisiana.
January 10, 1983.
*746 William J. Guste, Jr. Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., P. Michael Cullen, Abbott J. Reeves, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
Robert T. Garrity, Jr., Harahan, Kathleen Hughes, New Orleans, for defendant-appellant.
DENNIS, Justice.
Defendant, Julian Chaisson, was convicted by a jury of armed robbery, La.R.S. 14:64, and attempted second degree murder, La.R.S. 14:27, 30.1, arising out of the same incident. Defendant moved for a new trial on grounds that (1) the joint trial of the two offenses had confused the jury and denied him a fair trial and (2) dual sentences based on both convictions would constitute multiple punishment for the same offense and thereby subject him to double jeopardy. The trial court denied defendant's motion for a new trial, but quashed his armed robbery conviction and underlying indictment because it found merit in his double jeopardy claim. Defendant was sentenced to twenty years at hard labor because of his second degree murder conviction. The state did not seek review of the ruling adverse to it. The defendant appeals and assigns five errors. We find no merit in defendant's assignments and affirm his conviction and sentence.
Milton Jenkins, the victim of the crime, gave the following account of the incident in his trial testimony. On February 20, 1980, Jenkins was sitting in his purple Cadillac parked outside of a Time Saver store at 351 Gretna Boulevard. At about 8:00 *747 p.m. the defendant, Julian Chaisson, walked up to him, pointed a gun in his face and told him to get into the trunk. Jenkins hesitated and was "slapped" in the mouth with the butt of a .45. Jenkins attempted to flee after using the car door to knock the defendant off-balance. However, as he ran from the vehicle, Chaisson shot him once in the upper left arm and three times in the back. Jenkins was rushed to a hospital and successfully treated. The treating physician's testimony corroborated that Jenkins had been shot in the back.
An employee of the Time Saver observed the scuffle, heard the gunshots and saw Chaisson leave the scene in Jenkins' car. Lawrence Parks was waiting for Chaisson at a Shell Station nearby when he heard the shots. Parks fled in his own car, and later picked up Chaisson, who was at that time driving the Cadillac. Parks testified that Chaisson later told him that he had gotten in an argument with a man and shot him. Parks also testified that when he picked up Chaisson on Gretna Boulevard, Chaisson had papers with him and a ten dollar bill.
Chaisson took the witness stand and testified that he shot Milton Jenkins in self-defense. Chaisson claimed that Jenkins agreed to sell him drugs, and that Jenkins took thirty dollars from Chaisson. Instead of delivering drugs, however, Chaisson said that Jenkins shoved him off-balance with the car door, armed himself with a tire iron from the trunk, and advanced menacingly. Chaisson contends he was forced to pull out his pistol and fire in self-defense. The defendant also advanced intoxication as a defense, and his drunken condition was corroborated by the testimony of his brother.
Shortly after the shooting, Lawrence Parks was arrested in the 1600 or 1700 block of Gretna Boulevard. The defendant, however, escaped and was not arrested until May 30, 1980 in Mobile, Alabama. The charges against Parks were dropped in exchange for his testimony.

Assignments of Error Numbers One, Three and Nine
In these assignments, defendant contends that the trial court committed reversible errors by denying his motions to sever the offenses, quash the indictment, and grant him a new trial. Defendant argues that each of these motions should have been granted because a joint trial of the attempted murder and armed robbery charges subjected him to double jeopardy and denied him a fair trial by confusing the jury.
The defendant was not subjected to double jeopardy. The double jeopardy clause provides three separate constitutional protections: it protects against a second prosecution for the same offense after acquittal; it protects against a second prosecution for the same offense after conviction; and, it protects against multiple punishments for the same offenses. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In the present case, the defendant was not prosecuted a second time for the same offense after acquittal or conviction and, due to the action of the trial judge in quashing one conviction before imposing sentence, the defendant did not receive multiple punishment for the same offense. See State v. Doughty, 379 So.2d 1088 (La.1980).
A presumption that the defendant was prejudiced by jury confusion resulting from the joinder of offenses is not warranted. The same violent misappropriation served both as an essential element of the attempted murder charge and as basis for the independent charge of armed robbery. The joinder of these offenses in the present case did not violate the statutory rule prohibiting joinder of dissimilar or unrelated offenses designed to prevent juror confusion or distraction. C.Cr.P. art 493. Nor does it violate the constitutional prescription against double jeopardy. State v. Doughty, supra; State v. Beavers, 364 So.2d 1004, 1008 n. 4 (La.1978). Consequently, there is no justification for a legal presumption that the jury in this case rendered an improper verdict due to confusion.
Additionally, a review of the record reveals no grounds for finding any actual prejudice due to jury confusion. The jury *748 returned three times during its deliberations to request additional instructions on pertinent crime definitions and on the order in which it should consider the possible verdicts. On the last occasion, the foreman informed the judge that he had prematurely marked the verdict form to indicate a finding of "guilty of armed robbery" and requested a new form. The trial judge, however, instructed him to scratch out that verdict and to write on the same form whatever verdict the jury decided upon after further deliberations. When the jury returned the final time, it returned verdicts of guilty of attempted second degree murder and guilty of armed robbery. Upon polling all the jurors and receiving confirmation from the number of jurors required by law to support each verdict, the jury was discharged.
We cannot infer from this that the jury was confused. A juror is free to ask for additional instructions and to change his mind during deliberations in the light of such further charges. C.Cr.P. art. 808. The defense counsel did not object to any of the proceedings or instructions given when the jury returned to the courtroom. If counsel was aware of any cause to believe that the jury was confused, it was his duty to object or request further clarifying instructions from the judge. Under these circumstances, we will not speculate about the jury's verdict. Cf. State v. Stewart, 400 So.2d 633 (La.1981).

Assignment of Error Number Two
By this assignment, the defendant contends that the trial court committed reversible error by assigning to the prosecution counsel a table nearer the jury than that assigned to the defense. A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders. It has the authority and duty to require that its proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. La. Const.1974, Art. 5 § 1; C.Cr.P. art. 17. Of necessity, the physical arrangement of tables, chairs and other objects in a courtroom during a trial must be left to the discretion of the trial judge. In the absence of a showing of a misuse of his discretion injurious to a fair trial, this court will not substitute its judgment on such matters for that of the trial judge. See State v. Brown, 410 So.2d 1043 (La.1982). In the present case, there has been no such showing because the defendant has not alleged or proved any facts which indicate that he could not present an effective defense by use of the table assigned to him and his attorney.

Assignments of Error Numbers Five and Six
By these assignments, defendant first complains that the trial court erred by failing to strike the testimony of Officer Folse that items and photographs of items found in the vicinity of the crime were the victim's personal property and that some of them had been taken from his wallet. However, the defendant's attorney did not object to any of the officer's testimony. On cross-examination, the defense elicited candid admissions from the officer that he could not verify that the items belonged to the victim but assumed it to be true because of what other officers told him. At the close of Folse's testimony, the defense moved unsuccessfully to strike it from the record and to admonish the jury to disregard it.
This borders on being a frivolous assignment. A motion to strike is unknown to the criminal law of Louisiana. State v. Kirsch, 363 So.2d 429 (La.1978). Once a witness testifies, his testimony cannot be removed from the record. State v. Provost, 352 So.2d 661 (La.1977). The motion to admonish the jury was nothing more than an improper invitation for the judge to comment on the evidence. La.C.Cr.P. art. 772. Furthermore, the victim and other witnesses testified that the personal property items were his; considering this with Folse's frank admission as to the source of his information, the introduction of his testimony was of little consequence.
*749 Defendant next complains of the trial court's failure to strike the testimony of Officer Hintz to the effect that he found a $10 bill along with some of the victim's personal property items scattered on the side of a street down which the defendant had driven the victim's car following the shooting. But, the defendant did not make a contemporaneous objection and his motion to strike does not preserve his right to raise an objection on appeal. State v. Kirsch, supra; State v. Provost, supra. The defendant did object to the introduction of photographs of these items but a proper foundation for their introduction had been laid. The state had proved that they were relevant to the charged offense. State v. Haarala, 398 So.2d 1093 (La.1981).

Assignment of Error Number Seven
The defendant argues that the evidence was insufficient for a reasonable trier of fact to conclude that he was guilty of each element of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). His argument is without merit.
Dr. Francois Guimond of the West Jefferson Hospital testified that on the night of February 20, 1980, Milton Jenkins was brought into the emergency room for gunshot wounds. He further testified that the trajectory of the wounds indicated that the bullets had entered Jenkins from the back and exited through his chest. Julian Chaisson was positively identified as the man who shot Jenkins by both Jenkins and Mark Perry, an employee of the Time Saver and an eyewitness. Co-defendant Parks testified that Chaisson told him that he had "argued" with a man and "shot him." Carnie Burcham, the arresting officer, testified that the defendant told him he was "mad" at the victim and that the victim "turned and ran." Burcham further testified that the defendant told him he shot Jenkins four times, that he didn't like black people, and that if he had not recently changed from hollow-point ammunition, he would have "splattered" him.
The evidence fully supports a finding of guilt for every element of the offense of attempted second-degree murder. The assignment lacks merit.

Assignment of Error Number Eight
By this assignment of error, the defendant complains that the trial court erred in sustaining a state objection to the testimony of a defense witness who would have established that the victim, Milton Jenkins, had a reputation for being a drug dealer. From his remarks, it is evident that the trial judge precluded admission of the evidence because it was completely irrelevant.
The trial judge did not abuse his discretion in excluding this evidence. The defendant had the opportunity to question Jenkins directly about whether or not a drug transaction was in progress at the time of the incident, but during his cross-examination he declined to do so. While we cannot say that the evidence that Jenkins was a drug dealer was entirely irrelevant, its probative value was slight because it does not necessarily show that he was dealing at the time, reneged on a sale, or became aggressive. Such evidence hardly mitigates the overwhelming proof that the victim was not the aggressor, because it does not help to explain how he could have been both the aggressor and shot in the back while fleeing from the scene. The judge correctly determined that the slight probative value of such evidence was substantially outweighed by the risk that its admission would consume too much time, unnecessarily confuse the jury concerning the issues to be determined, and tend to excite the emotions of the jury to the undue prejudice of the opponent. State v. Ludwig, No. 81-K-1318, Nov. 29, 1982.
Nor was this evidence admissible as general reputation impeachment evidence. While evidence of general reputation for truth or moral character is admissible to impeach a witness, La.R.S. 15:490, such reputation evidence cannot be about particular acts, vices or courses of conduct. La.R.S. 15:491. The general American rule is even more limited in that reputation evidence for *750 impeachment is restricted entirely to reputation for truth or veracity. 3A Wigmore, Evidence § 923 (Chadbourn rev. 1970). Evidence that the witness has a reputation for being a drug dealer is evidence of a specific vice or course of conduct, and is therefore inadmissible for this type of impeachment. Cf. State v. Marshall, 359 So.2d 78 (La. 1978).
Lastly, this evidence was not admissible under La.R.S. 15:482, which allows the defendant to introduce evidence of the victim's dangerous character or his threats against the accused. Had the defendant proffered evidence of Jenkins' dangerous character, we would be confronted with a different case because a judge has virtually no discretion to exclude such evidence after an appreciable showing of an overt act against the defendant. State v. King, 347 So.2d 1108 (La.1977). Evidence of a reputation for having dealt in drugs, however, is not equivalent to evidence of dangerous character or threats against the accused. These categories are strictly construed in order to avoid the possibility that the bad character of the deceased or injured person will be put forward to serve improperly as a mere excuse for the killing or injury, under the pretext of evidencing his aggression. 1 Wigmore, Evidence, § 63 (3rd ed. 1940).

DECREE
The defendant's conviction and sentence are affirmed.
AFFIRMED.
LEMMON, J., concurs.