346 So.2d 1090 (1977)
STATE of Louisiana
v.
John J. BELL et al.
No. 58880.
Supreme Court of Louisiana.
May 16, 1977.
Rehearing Denied June 17, 1977.
*1092 Samuel Dickens, D. Bert Garraway, Baton Rouge, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph L. Roy, Marilyn C. Castle, Asst. Dist. Attys., for plaintiff-appellee.
DENNIS, Justice.
On January 10, 1972, a violent confrontation erupted between police officers and a number of Black Muslim demonstrators, when the officers attempted to clear North Boulevard, a thoroughfare in downtown Baton Rouge, which had been blocked by several parked cars. As a result of the confrontation five men were killedtwo sheriff's deputies and three of the defendants' alleged co-conspirators. Earlier in the day a television news reporter at the scene had been severely beaten; he remained unconscious on the date of trial of this case.
In response to the incident, a two day citywide curfew was imposed by local authorities, the National Guard was placed on stand-by alert, and certain public officials, including the mayor and the chief of police, issued public statements condemning the violence, calling for swift justice, and urging the exercise of reason and restraint to prevent further racial violence. Expectedly, the incident and the responses it generated were the subject of extensive news media publicityincluding some national coverage.
These nine defendants were charged by bill of information with having violated La. Acts 1969, No. 176 (La.R.S. 14:329.1-329.8)[1] by having incited and participated in a riot in which the death of a person occurred.
*1093 Defendants were brought to trial in April of 1973. At the conclusion of this trial all nine were found guilty as charged and were subsequently sentenced to serve twenty-one years at hard labor. On appeal these convictions and sentences were set aside by this Court on the ground that the trial judge committed prejudicial error by refusing to allow the defendants to produce witnesses and documentary evidence for consideration at the hearing on their motion for a change of venue. State v. Bell, 315 So.2d 307 (La.1975).
Thereafter, in late June and early July of 1976, the defendants were again brought to trial for their alleged violations of La.R.S. 14:329.1-329.8. Renewed efforts on their part to obtain a change of venue were unsuccessful. At the conclusion of this trial the jury of twelve found each of the nine defendants guilty as charged. Each was again sentenced to serve twenty-one years at hard labor, the maximum sentence authorized under the statute.
All defendants have appealed their convictions and sentences, relying on fourteen of fifteen errors assigned in the proceedings below.[2] For the following reasons, we conclude that the assignments presented for our review do not demonstrate reversible error, and consequently we affirm the convictions and sentences.
ASSIGNMENTS OF ERROR NOS. 1 and 11
By assignment of error number eleven, defendants challenge the ruling of the trial judge allowing the State to introduce into evidence the former testimony of two witnesses, Reed Canada and Warren Hall, which had been adduced at defendants' first trial in April of 1973. Defendants contend the State failed to make a proper showing, before introduction of the testimony, that the witnesses were unavailable to testify at trial. Conceding in brief that the witnesses were unavailable, defendants seek reversal on the ground that this showing followed, rather than preceded the offering of their former testimony.
Defendants' contention is not supported by the record. Before the State attempted to introduce the prior testimony of either witness, it called Dr. Hypolite Landry, the East Baton Rouge Parish Coroner, who testified, without objection by the defense, that both Hall and Canada were dead, and that their deaths had been certified by the coroner's office.
Likewise, defendants' contention that use of the prior recorded testimony violated their rights of confrontation under the Sixth Amendment to the United States Constitution and under Article I, Section 16 of the 1974 Louisiana Constitution is without merit. See, California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); State v. Jones, 325 So.2d 235 (La.1976); State v. Sam, 283 So.2d 81 (La.1973). The issues and parties at both trials were identical. Both Hall and Canada were subjected to cross-examination by defendants' counsel at the first trial; their testimony was, of course, given under oath and recorded verbatim; and, their unavailability for trial was demonstrated.
In presenting the former testimony of witnesses Hall and Canada to the jury, the *1094 following procedure was approved by the trial court and used:
East Baton Rouge Parish District Attorney Ossie Brown read the testimony of the deceased witnesses. Questions which had been asked by the prosecutor in the first trial were read by an assistant district attorney, while the former defense attorney's questions on cross-examination were read by defendants' present counsel.
Defendants timely objected to this procedure and renew their argument on appeal. They contend that Brown should not have been permitted to read the testimony of the unavailable witnesses, because, due to his position of respect in the community as an elected official, the jury might have been inclined to give greater weight to the testimony than it would otherwise have given. The State replies that the jury was well aware that Brown was not a neutral party, and thus argues that it is unlikely that the jury ascribed undue significance to the testimony.
We note that the trial judge, before the testimony of each absent witness was read, cautioned the jury that Brown was not testifying, but that he was merely reading the testimony of State witnesses who could not be called to testify in person.
The trial judge is vested with wide discretion in controlling the conduct and orderly process of trial. La.C.Cr.P. art. 17. We agree with defendants that the more desirable procedure would have been to have a neutral party read the prior testimony of the deceased witnesses, but we are not prepared to say that the procedure utilized below amounted to an abuse of discretion or a substantial violation of defendants' constitutional rights.
Assignments of error numbers one and eleven do not demonstrate grounds for reversal of defendants' convictions and sentences.
ASSIGNMENTS OF ERROR NOS. 2, 3 and 4
In these assignments defendants complain of rulings of the trial judge allowing two State witnesses to relate certain statements allegedly made by Samuel Upton, identified by other witnesses as the leader of the Muslims gathered on North Boulevard that day, at the scene of the incident and shortly before the violence erupted. The basis of defendants' objection is that the testimony was inadmissible hearsay.
John P. Boss, chief photographer for a Baton Rouge newspaper, was at the scene of the riot for some thirty minutes, from approximately 11:45 a.m. until 12:15 p.m. In response to his inquiries about what was going on, he was directed to Samuel Upton, who allegedly informed him that a "confrontation" with local authorities was planned.[3] When the photographer informed Upton that he intended to take some pictures, Upton, according to Boss, remarked: "* * * I don't care what you do, . . . you probably won't get out of here anyway. * * *"
Maurice Cockerham, a television news editor, testified that he heard Upton speaking to a gathering crowd from the roof of a car which had been used to block North Boulevard. According to this witness, Upton "referred to whites as white devils and as serpents and made several references to killing whites, . . . that their teachings required that they kill whites. * * *" Upton told the crowd, "we'll meet the white devil here today and kill him. * * *" He then turned and pointed at the witness and two other newsmen saying, "there are three of the devils here now, but there'll be more later." Cockerham estimated that these remarks were made at approximately 12:30 p.m. Shortly thereafter, the newsmen were set upon by the crowd, and one, who was unable to escape, was severely beaten. Within minutes the confrontation *1095 between the authorities and the crowd occurred, leaving five men dead.
Defendants claim that the trial judge's rulings admitting these statements, attributed to Samuel Upton, who was neither on trial nor present to testify,[4] violated the rule against hearsay evidence, and deprived the defendants of substantial rights.
La.R.S. 15:434 provides:
"Hearsay evidence is inadmissible, except as otherwise provided in this Code."
One of the exceptions to the hearsay ban contemplated by this provision is set forth in La.R.S. 15:447:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence." (Emphasis supplied.)
The definition of res gestae is narrowed by the language of La.R.S. 15:448, which provides:
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
The inflammatory statements allegedly made by Upton and related by Cockerham were directed to a gathering crowd. They immediately preceded the outbreak of violence, and were, in our view, necessary incidents of the criminal acts forming the basis of the charges against the defendantsinciting and participating in a riot. Upton's role as a participant in the crime was clearly established. Thus, the hearsay statements testified to by Cockerham constitute part of the res gestae of the crime, and were therefore properly admitted.
We cannot, however, conclude that Upton's comments to Boss were part of the res gestae of the crime. These statements do not appear to have been made to the crowd generally, in an effort to inflame the passions of the crowd and to provoke lawless action, but rather to Boss alone. While they tended to show Upton's present state of mind, and his formulated intent to provoke a violent confrontation, they were not, properly speaking, incident to the crime. Nevertheless, we conclude that the statements were properly admitted by the trial court, on the authority of the evidentiary rule embodied in La.R.S. 15:455, which provides:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
A prima facie case of conspiracy between Upton and defendants to incite a riot was established by independent evidence. The State introduced evidence other than Upton's remarks in its case in chief which showed more probably than not such a conspiracy existed. Accordingly, the State was entitled to utilize the evidentiary rule expressed in section 455 of Title 15. State v. Bennett, 341 So.2d 847 (La.1977); State v. Shepherd, 332 So.2d 228 (La.1976); State v. Kaufman, 331 So.2d 16 (La.1976); State v. Brown, 326 So.2d 839 (La.1976). See also, State v. Brumfield, 329 So.2d 181 (La.1976); McCormick, Evidence, § 267, 639-47 (2d ed. 1972). Of course, had the State had not shown that it was more probable than not that the defendants were engaged in a conspiracy with Samuel Upton to provoke and participate in a violent confrontation with the East Baton Rouge Parish authorities, then Upton's statements to Boss would have been inadmissible hearsay.
*1096 For the foregoing reasons, assignments of error numbers two, three and four are without merit.
ASSIGNMENTS OF ERROR NOS. 5 and 6
In these assignments of error the defendants contend that the trial court improperly tolerated violations of its sequestration order.
Among the motions filed by defendants prior to trial were motions for change of venue and to recuse the East Baton Rouge Parish District Attorney, Ossie Brown, and his staff. In connection with both of these motions, Brown was called to testify as a witness.
After the opening statements at the trial on the merits, defendants, through counsel, requested the "sequestration of all witnesses," see, La.C.Cr.P. art. 764, and the court entered the order. In assignment of error number five defendants complain that the trial court erred in refusing to order District Attorney Brown out of the courtroom. They contend that he should have been excluded because he had previously been called as a witness and placed under the rule of sequestration at the hearings on the motions to recuse and to change venue.
Defendants' argument lacks any merit. The district attorney took an active part in prosecuting the defendants; he was not called as a witness at the trial on the merits. His appearance as a witness in conjunction with certain pre-trial motions did not render him subject to the sequestration order entered at the beginning of the trial on the merits.
Defendants complain, in assignment of error number six, that the trial court should not have permitted television news reporter Henry Baptiste to testify in behalf of the State, because Baptiste had been present in the courtroom on the first day of trial.
Despite the fact that Baptiste had been present in his capacity as a news reporter at the crime scene on January 10, 1972, the State had not planned to call him as a witness at trial. Thus he was not placed under the court's initial order of sequestration. On the third day of trial, however, the State determined that his testimony was needed, and called him as a witness. Defendants timely objected, asking the trial court to exclude his testimony because he had been in the courtroom on the first day of trial "covering the story" as a newsman. Defendants' objection was overruled.
La.C.Cr.P. art. 764 provides:
"Upon its own motion the court may, and upon the request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."
This article vests, in the sound discretion of the trial judge, the authority to disqualify a witness who has violated the sequestration order; it does not compel disqualification. See, Official Revision Comment (b) of Article 764; State v. McDaniel, 340 So.2d 242 (La.1976); State v. Bias, 337 So.2d 426 (La. 1976); State v. Holmes, 305 So.2d 409 (La. 1974); State v. McKinney, 302 So.2d 917 (La.1974); State v. Lewis, 288 So.2d 324 (La.1974).
In State v. Batts, 324 So.2d 415 (La.1975), this Court found no abuse of discretion where the trial judge allowed testimony from a witness whom the State had no reason to anticipate calling at the beginning of trial, despite the presence of that witness in the courtroom during the taking of earlier testimony.
The rule of sequestration is intended to insure that a witness will testify on the basis of his own knowledge of the case without being influenced by the testimony of other witnesses, and to strengthen the utility of cross-examination in developing the facts. State v. McDaniel, supra; State v. Bias, supra; State v. Batts, supra. In the instant case the trial judge acknowledged *1097 that Baptiste had been "in and out" of the courtroom in the first day of trial, but he added the observation, "I don't remember Mr. Baptiste staying for any appreciable length of time." The trial judge, in overruling defendants' objection, was apparently of the view that Baptiste's sporadic exposure to the testimony given on the first day of trial was not sufficient materially to affect his testimony as a witness, or to undermine the defendants' ability to cross-examine him effectively.
Defendants have failed to demonstrate that the judge's ruling allowing Baptiste to testify amounted to an abuse of discretion.
Assignments of error numbers five and six are without merit.
ASSIGNMENT OF ERROR NO. 7
In this assignment of error defendants complain of the trial judge's refusal to grant a change of venue to avoid the effects of the extensive publicity which attended the incident and the defendants' first trial.
In a trial held in April of 1973, defendants were convicted of inciting and participating in a riot in which the death of a person occurred. Their convictions were reversed by this Court because the trial court refused to allow the defendants to introduce evidence in support of their motion at the hearing on the requested venue change.[5]State v. Bell, 315 So.2d 307 (La. 1975).
After our reversal, and prior to retrial, defendants renewed their request for a change of venue, claiming that the extensive publicity which attended the incident and the first trial had so prejudiced the public's mind that a fair trial was impossible. Upon remand, at the second hearing on the requested venue change, the trial judge listened to the testimony of fifteen witnesses[6] and reviewed numerous newspaper and magazine clippings offered by the defendants in support of their motion.
Defendants' witnesses, and particularly those from the news media, testified that news coverage of the incident and its immediate aftermath was extensive, and that the general public seemed quite aroused and racially divided at the time. Many testified that the incident itself had received some national television and press coverage. Publicity of the first trial, according to the witnesses, was considerable, but most agreed that it was not as extensive as that which had attended the incident itself. Many of the witnesses expressed their view that the community remained highly aware of and divided by the events at the time of defendants' first trial. The witnesses generally agreed that since the end of the first trial in 1973, publicity concerning the case had been sporadic and more restrained.
When asked whether, in view of their present evaluation of community sentiment, they felt that the defendants could, in mid-1976, obtain a fair trial in East Baton Rouge Parish, more than two-thirds of the witnesses testified that they could. On the basis of the evidence offered by the defendants at the hearing on the motion for *1098 change of venue, the trial judge rejected defendants' request, apparently concluding that defendants had failed to carry their burden of proof. The judge qualified his denial, however, reserving to the defendants the right to re-urge the motion in the event jury selection became too difficult.[7]
To be entitled to a change of venue, the defendant must prove that there is such prejudice in the collective mind of the community that a fair trial is impossible. La.C.Cr.P. art. 622; State v. Smith, 340 So.2d 222 (La.1976); State v. Clark, 340 So.2d 208 (La.1976); State v. Jenkins, 340 So.2d 157 (La.1976); State v. Berry, 329 So.2d 728 (La.1976); State v. Dillard, 320 So.2d 116 (La.1975); State v. Dupuy, 319 So.2d 294 (La.1975). Whether the defendant has made the requisite showing is a question addressed to the sound discretion of the trial court. State v. Clark, supra; State v. Berry, supra; State v. Wilkerson, 326 So.2d 353 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976).
In State v. Bell, 315 So.2d 307 (La.1975), we set forth the following factors to be considered in determining whether to change venue:
"* * * (1) [T]he nature of pretrial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire." 315 So.2d at 311.
Other factors we have indicated are relevant to this inquiry include:
"* * * The degree to which the publicity has circulated in areas to which venue could be changed, the care exercised and the ease encountered in the selection of the jury, the familiarity with the publicity complained of and its resultant effect, if any, upon the prospective jurors or the trial jurors, and the peremptory challenges and challenges for cause exercised by the defendant in the selection of a jury. See, generally, Annotation 33 A.L.R.3rd 17 (1970)." State v. Berry, supra, at 730.
In considering whether the defendants demonstrated an abuse of discretion in the trial court's ruling denying the requested venue change, we have tested the evidence adduced at the hearing on the motion for change of venue, and the testimony of the prospective jurors on voir dire against the particular factors enumerated in Bell and Berry.
There is no doubt the publicity surrounding the incident and the defendants' first trial was extensive, and that to some extent, public officials participated in the initial dissemination of that publicity. Nevertheless, a substantial majority of defendants' witnesses testified at the hearing, that during the passage of time a considerable change had occurred in the feelings and attitudes in the community favoring a fair trial for defendants in East Baton Rouge Parish. The defendants' second trial was held some four and one-half years after the incident, and some three and one-quarter years after their first trial.
As the public attitudes mellowed, the divisive influences likely to prevent the truthful response of prospective jurors on voir dire correspondingly diminished. To select the twelve member jury in this case, four hundred fifty-six prospective jurors were called and examined on voir dire. Of these, two hundred fifty-two were excused for cause by the trial judge. Ninety were peremptorily challenged by the State; and one hundred two were challenged peremptorily by the defense. Neither the State nor the *1099 defense exhausted its peremptory challenges.
Of the two hundred fifty-two jurors challenged for cause, and excused by the trial judge, one hundred fifty-four were excused because they indicated they had a fixed opinion in the case, or because they expressed some doubt about whether they could put any past publicity out of their minds. The remaining jurors excused by the trial judge for cause, were dismissed because of their failure to meet the statutory qualifications; for medical or physical reasons; because of their acquaintance, relation or friendship with the parties involved; because of their professed inability to understand and apply the law; for religious reasons; and the like.
After considering the foregoing, we are unable to conclude that the trial court's refusal to grant a change of venue amounted to an abuse of discretion. Thus, assignment of error number seven is without merit.
ASSIGNMENT OF ERROR NO. 8
In this assignment of error defendants contend they were denied effective assistance of counsel by the trial judge's refusal to grant their motion for appointment of additional counsel. Three attorneys were originally appointed to represent the nine defendants in the instant proceedings, but one was allowed to withdraw because his responsibilities with the Baton Rouge Legal Aid Society foreclosed his service as defense counsel. Thus, two attorneys represented the nine defendants in the proceedings below.
At the 1973 trial, the defendants had only two attorneys actively participating in the trial, but counsel had the assistance of an additional attorney standing by in the courtroom, as well as the aid of the investigatory staff of the now defunct Office of Public Defender. Defense counsel argue that they are both essentially solo practitioners, that the representation of the nine defendants herein has placed considerable financial and personal strain upon them, and that, as a result, their representation of the defendants was not what it might have been had additional counsel been appointed.
In denying the request for additional counsel, the trial judge pointed out that counsel had the benefit of a transcript of the entire 1973 trial. They thus had advance notice of the witnesses who would be called, the testimony they would give, and the full extent of the State's case. With all the information from the first trial available, counsel's task of preparation was greatly simplified, and much of the investigation in the case was complete.
Because defendants have not pointed to any specific prejudice resulting from the trial court's ruling, reversible error has not been shown.
ASSIGNMENTS OF ERROR NOS. 9 and 10
These assignments of error relate to rulings of the trial court refusing to grant defendants' motions to recuse the East Baton Rouge Parish District Attorney and his staff, and the trial judge.
Defendants moved to recuse the entire East Baton Rouge Parish District Attorney's Office because one of the attorneys who represented the defendants at their first trial had since joined the district attorney's staff as an assistant. Additionally, other members of the district attorney's staff had worked for the Office of Public Defender while it was handling the defendants' case.
Defendants acknowledge in brief that they were unable, at the hearing on the motion to recuse, to prove that any confidential information was passed to the district attorney, or to those on his staff handling the prosecution, by persons privy to privileged matter. Nevertheless, in their ninth assignment of error, they complain of the ruling of the trial judge denying their motion.
This assignment of error is without merit. In State v. Brown, 274 So.2d 381 (La.1973), this Court, considering substantially the same question as that presented herein, held:

*1100 "The mere fact that an assistant district attorney previously represented an accused does not ipso facto require disqualification of the District Attorney in the criminal proceeding. Especially, as here, where the Assistant District Attorney was not called upon to use against his former client any confidential knowledge gained through their former association, no prejudice could result to the accused.
"In the instant case, defendant has failed to provide any proof, beyond the bare allegation, that the District Attorney based the prosecution of the defendant on any facts wholly or partially acquired through the Assistant District Attorney's prior professional relation as the defendant's attorney. The motion merely advanced the conclusion that the Assistant District Attorney's employment by the District Attorney was prejudicial to the defendant and on that account the defendant believed he could not receive a fair trial. Such a conclusionary statement did not require the trial court to recuse the District Attorney." 274 So.2d at 382.
The language quoted is applicable in the instant case. See also, State v. Brazile, 231 La. 90, 90 So.2d 789 (1956).
Also prior to their second trial, defendants filed a motion to recuse the trial judge, alleging that he was biased and prejudiced against them, having served as trial judge in the first trial and made rulings unfavorable to them, and further that, because the convictions obtained at the first trial were reversed, he would tend to be even more biased and prejudiced against the defendants in the second trial. In their tenth assignment of error defendants contend the trial court erred in denying this motion sua sponte, without referring it to another judge for hearing.
La.C.Cr.P. art. 671 provides inter alia:
"In a criminal case a judge of any court, trial or appellate, shall be recused when he:
"(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial; * * *."
La.C.Cr.P. art. 674 provides:
"A party desiring to recuse a trial judge shall file a written motion therefor assigning the ground for recusation. The motion shall be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675." (Emphasis supplied.)
According to the jurisprudence interpreting these articles, a motion to recuse a trial judge must be based on more than mere general conclusory allegations. State v. Maduell, 326 So.2d 820 (La.1976); State v. Collins, 288 So.2d 602 (La.1974). The motion for recusation must set forth allegations of fact which state a statutory cause for recusation before the trial judge is required to refer the motion to another judge. State v. Collins, supra. The mere fact that a judge has presided over prior criminal proceedings involving the same defendants does not alone establish that the judge has developed bias or prejudice to such an extent that he will be unable to conduct a fair and impartial trial. State v. Navarre, 292 So.2d 210 (La.1974).
We find that defendants' motion contained mere conclusory allegations. Defendants pointed to no particular words or conduct demonstrating bias or prejudice on the part of the trial judge. The trial judge was correct in dismissing the motion without referring the matter to another judge.
Assignments of error numbers nine and ten do not have merit.
ASSIGNMENTS OF ERROR NOS. 1 (filed May 29, 1975), 12 and 13
In these assignments of error defendants challenge the trial judge's ruling denying *1101 their motion to quash the bill of information charging them with having violated La.R.S. 14:329.1-329.8.
On February 10, 1972, these defendants, and others, were charged by grand jury indictment with murder. Under the terms of La.C.Cr.P. art. 578, the State then had three years to commence trial on these charges, unless the prescriptive period was extended for one of the causes enumerated by La.C.Cr.P. art. 579.
Thereafter, before the time limitations had run for institution of prosecution, as set forth in La.C.Cr.P. art. 572, the State charged the defendants by bill of information with inciting and participating in a riot in which the death of a person occurs. La. R.S. 14:329.1-329.8. The State timely commenced trial on these charges in April of 1973. Defendants were convicted but on appeal their convictions were reversed, and the cause was remanded for a new trial. Under the terms of La.C.Cr.P. art. 582, the State had to commence the new trial within two years of the reversal.
During this time the State took no action with respect to the murder indictment which had been handed down on February 10, 1972. In March of 1976, defendants filed a motion to quash that indictment, alleging that the time limit for commencement of trial as set forth in La.C.Cr.P. art. 578 had expired. Ultimately the trial judge granted defendants' motion to quash the murder indictment.
Thereupon, the defendants filed a motion to quash the bill of information in the instant case, arguing that La.C.Cr.P. art. 581 barred further prosecution by the State. La.C.Cr.P. art. 581 provides:
"Upon the expiration of the limitations established by this Chapter, the court shall, upon motion of the defendant, dismiss the indictment. This right of dismissal is waived unless the motion to quash is made prior to trial.

"If the indictment is dismissed under this article, there shall be no further prosecution against the defendant for the same or a lesser offense based on the same facts." (Emphasis supplied.)
Defendants' motion to quash the instant information was denied by the trial court and the matter proceeded to trial. The defendants were convicted and this appeal followed.
Defendants contend that criminal laws, including procedural statutes, are stricti juris and that the second paragraph of Article 581 should be construed to bar further prosecution for any "lesser" offense based on the same facts. They argue that the present information charges them with a "lesser offense" which is based on the same facts as the murder charge, which the trial court quashed.
However, the State applied for writs from the trial court's ruling quashing the murder indictment. We granted writs, vacated the judgment, and remanded for an evidentiary hearing. See, State v. Bell, 337 So.2d 224 (La.1976). Both the State and the defense concede that on remand the trial judge directed the State to resubmit the matter to the East Baton Rouge Parish Grand Jury. The Grand Jury then returned a "no true bill" against each defendant.
As we recently construed Article 581, it prohibits reprosecution for the same or a lesser offense based on the same facts, after an indictment is quashed because trial was not timely commenced. See, State v. Powers, 344 So.2d 1049 (La. 1977). The information upon which the present convictions are based was not filed after the murder indictment was "quashed." The facts demonstrate rather clearly that the State has not attempted to circumvent the time limits fixed for commencement of trial.
Accordingly, we find no merit in these assignments of error.
For the foregoing reasons, defendants' convictions and sentences are affirmed.

On Application for Rehearing
PER CURIAM:
The single contention posed by the defendants' application for rehearing relates to a factual error in our original opinion. *1102 Therein, we stated that District Attorney Ossie Brown was not called as a witness at the trial on the merits.
In fact, the district attorney was called as a witness. He had previously read to the jury the prior recorded testimony of two deceased witnesses, and he was called by the State to verify that one of those witnesses had made an in-court identification of the defendants at the former trial. On cross-examination, the district attorney was asked about the mental condition of one of the deceased witnesses, and whether the other had a prior criminal record.
None of the district attorney's testimony related to the merits of the State's case against the defendants.
Further, his brief testimony was not of a character to be affected in any way by his presence and participation in defendants' trial. Thus, defendants suffered no prejudice from the ruling of the trial court refusing to exclude the district attorney from the courtroom.
The conclusion reached in our original opinion that defendants' assignment of error was without merit is correct.
Accordingly, defendants' application for rehearing is denied.
Rehearing denied.
NOTES
[1] La.R.S. 14:329.1-3, 329.7 provide:

"A. A riot is a public disturbance involving an assemblage of three or more persons acting together or in concert which by tumultuous and violent conduct, or the imminent threat of tumultuous and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property.
"Inciting to riot is the endeavor by any person to incite or procure any other person to create or participate in a riot.
"Any law enforcement or peace officer or public official responsible for keeping the peace may issue a command to disperse under the authority of R.S. 14:329.1-14:329.8 if he reasonably believes that riot is occurring or about to occur. The command to disperse shall be given in a manner reasonably calculated to be communicated to the assemblage.
"Whoever willfully fails to comply with a lawful command to disperse shall be punished in accordance with the provisions of R.S. 14:329.7.
"A. Whoever willfully is the offender or participates in a riot, or is guilty of inciting a riot, or who fails to comply with a lawful command to disperse, or who is guilty of wrongful use of public property, or violates any other provision hereof shall be fined not more than five hundred dollars or be imprisoned not more than six months, or both.
"B. Where as a result of any willful violation of the provisions of R.S. 14:329.1-14:329.8 there is any serious bodily injury or any property damage in excess of five thousand dollars, such offender shall be imprisoned at hard labor for not more than five years.
"C. Where, as a result of any willful violation of the provisions of R.S. 14:329.1-14:329.8, the death of any person occurs, such offender shall be imprisoned at hard labor for not to exceed twenty-one years."
[2] Defendants, through counsel, perfected two assignments of error on May 29, 1975. Thereafter, on October 29, 1976, they perfected thirteen additional assignments of error. Assignment number one, filed May 29, 1975, is substantially identical to assignment number twelve, filed October 29, 1976, and they will be treated as one for purposes of this opinion.

In assignment number two, filed May 29, 1975, defendants urged that the trial court committed reversible error in denying defendants' motion for "Reasonable Bond" pending trial. The assignment is clearly without merit in the context of a post-conviction appeal. See, State v. Jones, 332 So.2d 267 (La.1976). Further, this assignment of error, having been neither briefed nor argued in this Court, is deemed abandoned. State v. Phillips, 337 So.2d 1157 (La.1976).
[3] From the testimony of John Boss:

"* * * I asked him [Upton], uh, what was going on, was it a demonstration, and he says, no, it is not a demonstration, it's a confrontation. I said, with who? And he said, with the chief of police, the mayor, the other city officials."
[4] Upton was one of the Black Muslims killed in the outbreak of violence.
[5] At the hearing on the motion for change of venue in the 1973 trial of this matter, the trial judge based his ruling denying the venue change on a "dry run" voir dire examination in which fifty-seven prospective jurors were examined. Defense counsel at that time acquiesced in the procedure used by the trial court, but reserved the right to produce evidence in the event the trial judge concluded, at the end of the "dry run" examination, that the requested venue change would not be granted. After the potential jurors had been questioned, the trial judge denied the application for change of venue, and over strenuous objection refused to consider any further evidence which defendants offered to produce.

In reversing the convictions, a majority of this Court concluded that the trial judge's ruling precluded a determination of whether there were influences in the community which would make it impossible to obtain a fair trial notwithstanding the fact that jurors could be found who were not subject to challenges for cause.
[6] At the hearing on the motion for change of venue defendants called fifteen witnesses, including representatives of all three Baton Rouge television stations; the two major newspapers; and two radio stations; public officials; leaders of political activist groups, both black and white; and several attorneys.
[7] Defendants did renew their motion for a change of venue on the fifth day of voir dire, and after ten jurors had been selected and sworn. Their motion was overruled by the trial judge, and their objection noted.