NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1507

STATE OF LOUISIANA

VERSUS

JOSEPH ANTHONY ROMERO

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 07-623
HONORABLE JAMES R. McCLELLAND, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Marc T. Amy, and J. David Painter, Judges.

CONVICTIONS AND SENTENCES AFFIRMED.

J. Phillip Haney
District Attorney
Walter J. Senette, Jr.
Assistant District Attorney
St. Mary Parish Courthouse, 5th Floor
Franklin, LA 70538
(337) 828-4100, Ext. 550
Counsel for Appellee:
        State of Louisiana

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**P. O. Box 2806**
**Monroe, LA 71207-2806**
**(318) 388-4205**
**Counsel for Defendant/Appellant:**
     **Joseph Anthony Romero**

**Joseph Anthony Romero**
**In Proper Person**
**Louisiana State Penitentiary**
**Camp D - Raven 1 - R/1**
**Angola, LA 70712**

**DECUIR, Judge.**

Defendant, Joseph Anthony Romero, was convicted on three counts of unauthorized use of a motor vehicle, in violation of La.R.S. 14:68.4, and two counts of aggravated flight from an officer, in violation of La.R.S. 14:108.1. The court sentenced Defendant to ten years at hard labor for each count of unauthorized use of a motor vehicle and two years at hard labor for each count of aggravated flight from an officer. The sentences were ordered to run consecutively.

Subsequently, the State filed an habitual offender bill, listing eleven prior offenses committed by Defendant. After a hearing, the court found Defendant to be an habitual offender, set aside his sentence for count one, and replaced it with sixty years at hard labor, which would continue to run consecutively. Defendant lodged this appeal.

## STATEMENT OF FACTS

On December 6, 2006, Ralph Royer left his 1987 Dodge pickup truck idling outside the convenience store adjacent to the Holiday Inn in New Iberia. As he exited the store, Royer saw his truck leaving the parking lot. A security guard was standing outside at the time. Royer asserted he had not given anyone permission to drive his vehicle. The truck was recovered approximately a week to ten days later, but it needed extensive repairs to the electrical system. Both Royer and the security guard, Baronne Charles, identified Defendant as the perpetrator.

In New Iberia on December 27, 2006, Tamayher Fuselier started her car, which was parked in her carport, then went back inside. When she stepped back outside, she saw a man backing her car out of her driveway. She told him to bring her car back, but he kept going. Fuselier and her husband reported the car stolen and identified Defendant as being present in the neighborhood along with his girlfriend. The car

was recovered the next morning after an extended high speed police chase. Defendant was not apprehended in the vehicle but, Officer Jeff Vincent of the Erath Police Department identified Defendant as the driver.

On January 2, 2007, Cornell Eugene, Sr. stopped for gas at Landry's Truck Stop. When he went inside, one of the workers told him that someone had just left in his vehicle, a 1994 Honda Accord. Mr. Eugene's brother-in-law, Warren Drexler, was with him. Drexler had stepped outside of the car to dispose of some trash and left the automobile running. The car was reported stolen and Ivan McIntyre, a law enforcement detective who was off duty and in the Wal-Mart parking lot just before midnight on January 4, 2007, observed Defendant enter the car and exit the parking lot. Deputy Erin Irby, with the Iberia Parish Sheriff's Office was entering the parking lot at the time and gave chase. After an extended high speed chase, Defendant abandoned the vehicle and eluded capture.

## ERROR PATENT

After reviewing the record, we note one error patent. The record before this court does not reflect that Defendant, before being adjudicated a habitual offender, was advised of his right to remain silent, his right to a hearing, and his right to have the State prove its case against him.

In *State v. Washington*, 96-656 (La.App. 3 Cir. 1/15/97), 687 So.2d 575, the court was faced with a similar situation and applied a harmless error analysis. The court held, in pertinent part:

> The defendant neither acknowledged his prior offenses nor admitted the truth of the allegations contained in the habitual offender bill of information whereas the state presented the court with competent evidence as to the defendant's identity and prior convictions. The state introduced a pen packet of the sentences that defendant had served for his two prior convictions. Deputy Shirley Green, an expert in

2

fingerprint analysis, took the defendant's fingerprints in court, compared them with the fingerprints included within the pen packet, and concluded that they matched. Additionally, the state asked the court to take judicial notice of the defendant's testimony at his merit trial. The trial judge had also presided over defendant's merit trial where the defendant admitted that he had been previously convicted of two burglaries in Mississippi. In a multiple offender proceeding, the trial judge has the right to take judicial notice of any prior proceeding of the same case over which he presided. *State v. Martin*, 400 So.2d 1063 (La.1981).

We conclude that the state presented sufficient competent evidence to adjudicate the defendant a third offense habitual offender such that if the defendant were not advised of his rights, the omission was merely harmless error.

*Id.* at 583.

In this case during the habitual offender hearing, Defendant neither acknowledged his prior offenses nor admitted the truth of the allegations contained in the habitual offender bill of information. The State relied on Defendant's previous trial testimony to prove identity; the State introduced a copy of the trial transcript in the record and requested the trial judge, who had presided over the trial, to take judicial notice of Defendant's testimony. Additionally, the State relied on the pen packs, bills of information, transcripts, and minute entries to prove the prior convictions. Accordingly, we find Defendant received a fundamentally fair hearing and the error is harmless.

**ASSIGNMENT OF ERROR NO. 1**

Defendant argues, "[t]he evidence adduced at trial was insufficient to support three convictions of unauthorized use of a movable and two convictions of aggravated flight from a police officer." Defendant asserts that the State failed to prove he committed unauthorized use of a motor vehicle because the prosecution failed to establish he was the person who stole the vehicle.

3

STANDARD OF REVIEW:

The Louisiana Supreme Court has discussed the standard of review for evaluating the sufficiency of the evidence on appeal:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86.

> Additionally, where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, "assuming every fact to be proved that the evidence tends to prove." La. R.S. 15:438. The statutory requirement of La. R.S. 15:438 "works with the *Jackson* constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury."

*State v. Draughn*, 05-1825, p. 7 (La.1/17/07), 950 So.2d 583, 592, *cert. denied*, 552 U.S. 1012, 128 S.Ct. 537 (2007) (citations omitted).

UNAUTHORIZED USE OF A MOTOR VEHICLE:

"Unauthorized use of a motor vehicle is the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently." La.R.S. 14:68.4.

Royer Incident:

The evidence presented at trial showed that on December 6, 2006, Mr. Royer left his truck running while he made a purchase inside a store. Mr. Royer walked past Defendant on his way into the store. While Mr. Royer was inside the building, his truck was driven away by another without Mr. Royer's permission. An eyewitness identified Defendant as the person driving away in the Royer vehicle. Accordingly,

4

there is sufficient evidence to support Defendant's conviction for unauthorized use of a motor vehicle based upon the Royer incident.

<u>Fuselier Incident</u>:

The evidence presented at trial showed that on December 27, 2006, Mrs. Fuselier turned on her car to warm the engine; she left it running and went back inside her house. While she was inside, her car was driven away without her permission. The vehicle was later recovered after a high-speed chase which ended a short distance from the homes of both Defendant's sister and his girlfriend. The driver fled the vehicle and eluded capture by law enforcement. A law enforcement officer who participated in the pursuit identified Defendant as the driver of the vehicle. Mrs. Fuselier maintained that Defendant's girlfriend had been standing outside when the vehicle was taken.

Hence, the direct evidence presented at trial was sufficient to show that someone took the Fuseliers' vehicle without their consent. The circumstantial facts, the presence of Defendant's girlfriend at the time of the taking, and Defendant later being seen driving the vehicle, provide the reasonable inference that Defendant was the person who took the vehicle. Defendant did not have permission to use the Fuselier automobile, and his evasive behavior when he was noticed by law enforcement the next day shows that he knew he did not have the owners' consent to use the vehicle. Therefore, there was sufficient evidence presented at trial to support Defendant's conviction for unauthorized use of a motor vehicle based upon the Fuselier incident.

Eugene Incident:

The evidence presented at trial showed that on January 2, 2007, Mr. Eugene left his keys in the car and it was driven away by another without his permission. On January 4, 2007, an off-duty detective familiar with Defendant saw him enter and drive away in Eugene's car. When officers located the vehicle shortly thereafter and signaled Defendant to stop the vehicle, he evaded the officers by driving away at a high speed and by fleeing on foot when he crashed the car. At trial, the off-duty detective positively identified Defendant as the person using Eugene's automobile in the Wal-Mart parking lot on January 4, 2007.

Thus, the direct evidence presented at trial was sufficient to show Defendant was driving Eugene's car in the Wal-Mart parking lot. Shortly thereafter, Defendant demonstrated guilty knowledge by behaving evasively when signaled to stop by law enforcement. Hence, there was sufficient evidence presented at trial to support Defendant's conviction for unauthorized use of a motor vehicle based upon the Eugene incident.

AGGRAVATED FLIGHT FROM AN OFFICER:

Defendant also contends the State failed to prove he committed aggravated flight from an officer. Louisiana Revised Statutes 14:108.1 prohibits drivers from refusing to stop when an officer signals the driver to halt by activating lights and sirens on a marked police vehicle:

> C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle.

6

D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle commits at least two of the following acts:

(1) Leaves the roadway or forces another vehicle to leave the roadway.

(2) Collides with another vehicle.

(3) Exceeds the posted speed limit by at least twenty-five miles per hour.

(4) Travels against the flow of traffic.

La.R.S. 14:108.1 (C-D).

In *State v. Ashley*, 33,880 (La.App. 2 Cir. 10/4/00), 768 So.2d 817, 820, *writ denied*, 00-3122 (La. 12/8/00), 776 So.2d 466, the second circuit reviewed the sufficiency of the evidence in an aggravated flight from an officer case. Officers on patrol spotted a vehicle for which they had earlier received a "be on the lookout" bulletin. *Id*. at 82. The officers made eye contact with the defendant, who was driving the automobile. *Id*. The officers then verified that the car was stolen and attempted to stop the car with an arranged roadblock. The vehicle left the roadway, traveled around the roadblock, and drove away at a high rate of speed, going more than twenty-five miles per hour over the posted limit. Officers, with active lights and sirens, pursued the automobile and observed it run a red light. *Id*. The defendant eventually lost control, crashed the car, and fled on foot. *Id*. The second circuit found "that the evidence, viewed in the light most favorable to the prosecution, was sufficient to prove the elements of the offense beyond a reasonable doubt." *Id*. at 82.

Fuselier Incident:

The record shows that on December 28, 2006, an officer for the Erath Police Department clocked a vehicle traveling twenty-two miles per hour over the speed

7

limit. The officer signaled the driver to stop by activating his lights and siren, but the vehicle did not stop. The officer pursued and the fleeing vehicle evaded, reaching speeds of 110 miles per hour in forty-five to fifty-five mile per hour speed zones and 100 miles per hour in a sixty-five mile per hour speed zone. During the pursuit, the fleeing vehicle also crossed the median and traveled east in the westbound lane. The officer was able to get a clear view of the driver of the fleeing vehicle, and, at trial, he identified Defendant as the driver of the vehicle.

Therefore, the evidence presented at trial showed that Defendant intentionally refused to bring the vehicle he was driving to a stop under circumstances wherein human life was endangered, knowing that he had been given a visual and audible signal to stop, via lights and siren, by a police officer when the officer had reasonable grounds to believe that the driver had committed an offense, exceeding the speed limit. Defendant's flight endangered human life because his vehicle left the roadway, he exceeded the posted speed limit by at least twenty-five miles per hour, and he traveled against the flow of traffic. Accordingly, there was sufficient evidence to prove that Defendant committed aggravated flight from an officer in the Fuselier vehicle.

Eugene Incident:

Officers received notice from an off-duty detective that Defendant had been seen driving a stolen vehicle at a Wal-Mart. Officer McIntyre responded to the dispatch; when she and the other responding officers located the vehicle, Officer McIntyre signaled Defendant to stop the vehicle by activating her lights and siren. Defendant did not stop the vehicle; instead, he sped away, reaching speeds of ninety to ninety-five miles per hour in forty-five mile per hour speed zones. The chase

8

ended when the vehicle Defendant was driving left the roadway and crashed into a large ditch.

Hence, the evidence presented at trial showed that Defendant intentionally refused to bring the vehicle he was driving to a stop under circumstances wherein human life was endangered, knowing that he had been given a visual and audible signal to stop, via lights and siren, by a police officer when the officer had reasonable grounds to believe that the driver had committed an offense, unauthorized use of a motor vehicle. Defendant's flight endangered human life because he exceeded the posted speed limit by at least twenty-five miles per hour and because his vehicle left the roadway. Thus, there was sufficient evidence to prove that Defendant committed aggravated flight from an officer in the Eugene vehicle.

For the foregoing reasons, this assignment of error is without merit.

**ASSIGNMENT OF ERROR NO. 2**

Defendant contends, "[i]t was error for the Trial court to allow joinder of charges stemming from three separate incidents." Defendant complains that the trial court, on the day of jury selection, granted the State's motion to consolidate the cases into one bill of information and one trial. Defendant concedes that each aggravated flight from an officer charge was properly joined with their related unauthorized use of a motor vehicle charge and that the district court had previously ruled the other offenses would be admissible as other crimes evidence in each trial. Defendant argues, however, that the charges did not have much in common and were not close in time. Defendant posits that the only common factor in the separate charges was that the vehicles were taken after being left running. Defendant urges the cases were not based on a single act or transaction, and they were also not connected by a

9

common scheme or plan.[1] Defendant also asserts his case was prejudiced by the joinder because the facts were complicated enough to confuse the jury.

Under Louisiana law, similar offenses may be charged together, and felonies may be charged with relative felonies if they are similar. La.Code Crim.P. art. 493; La.Code Crim.P. art. 493.2. The supreme court has also held that crimes may be tried jointly if the evidence of each would be admissible in the trial of the other. *State v. Dickinson*, 370 So.2d 557 (La.1979).

Defendant does not assign error to the trial court's ruling that each crime would have been admissible as other crimes evidence in the trial of the others. Under *Dickinson*, it was permissible to try the charges together because the evidence of each would have been admissible as "other crimes" evidence at the trials of the other two unauthorized use of a motor vehicle charges.

Defendant urges that the charges are not similar enough to warrant joinder. Review of the record shows the charges are the same for each incident. Moreover, the facts of each unauthorized use of a motor vehicle conviction prosecuted in the instant case show that each of the vehicles was taken from its owner in an identical manner; each vehicle was driven away by an unauthorized person after the owner left the vehicle parked with the engine running and went inside a nearby building. Therefore, the unauthorized use of a motor vehicle charges are of a similar character.

Defendant contends that the one-month time frame of the offenses shows that they were not part of a common scheme or plan, so the timing of the incidents should

---

[1] Defendant also urges that the Royer case was improperly joined because it required a twelve-person jury; whereas, the remaining charges did not. "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La.Code Crim.P. art. 841. Because Defendant did not argue to the trial court that this conviction, alone, required a twelve-person jury, it will not be considered on appeal.

10

act as a bar to joinder. In *Dickinson*, the supreme court determined that, even though the offenses were separated by a year, the trial court did not abuse its discretion in refusing to sever the charges because the near-identical *modus operandi* was relevant to prove the co-defendants were the perpetrators. *Dickinson*, 370 So.2d at 557. Likewise, the facts of the instant charges contain a near-identical *modus operandi*; therefore, the one-month span of time over which the three unauthorized use of motor vehicle incidents in the current case occurred would not bar their joint prosecution.

Defendant also asserts that he was prejudiced because "[t]he facts of the three cases are complicated enough to confuse a jury[.]" "If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires." La.Code Crim.P. art. 495.1.

> In determining whether prejudice may result from joinder of multiple counts of criminal conduct, the trial court should consider whether the jury would be confused by the various counts; whether it would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition on the part of the defendant; and whether, considering the nature of the offenses, the charging of several crimes would make the jury hostile toward the defendant. Additionally, the defendant has a heavy burden of proof when he alleges prejudicial joinder of offenses. Motions for severance of offenses are addressed to the sound discretion of the trial court and should not be disturbed on appeal in the absence of an abuse of discretion.

*State v. Hawkins*, 97-726, p. 5 (La.App. 3 Cir. 10/29/97), 702 So.2d 1121, 1124 (citations omitted), *writ denied*, 97-2976 (La. 4/3/98), 717 So.2d 230.

11

Although Defendant alleges that the facts could have confused the jury, he does not explain how. The State presented the evidence in sequence by the vehicle involved in the charged offenses. It presented all of its evidence regarding Mr. Royer's truck before introducing any evidence regarding the Fuseliers' vehicle, and the prosecution presented all of its evidence pertaining to the Fuseliers' car before it began introducing the evidence relating to Mr. Eugene's automobile. In this manner, the State kept the facts of each case distinct from the others. Defendant does not allege any of the other possible grounds for prejudice.

Accordingly, the trial court did not abuse its discretion in denying Defendant's motion to quash based on misjoinder.

## ASSIGNMENT OF ERROR NO. 3

Defendant urges, "[i]t was error for the Trial Court to refuse to allow Mr. Romero to present a defense through use of alibi witnesses." Defendant alleges that he had three potential alibi witnesses who were not allowed to testify at trial. Defendant acknowledges that the witnesses were not disclosed prior to the deadline set forth in La.Code Crim.P. art. 727(A). He asserts, however, that trial counsel did not actually discover the existence of the witnesses until the Friday prior to trial. Defendant claims that the State was aware of the witnesses because the defense had moved to subpoena them even though the motion did not state that they were alibi witnesses. Thus, the State would not have been prejudiced by the witnesses' testimony.

Louisiana Code of Criminal Procedure Article 727 sets forth the sanction for failing to give notice of alibi witnesses:

> D. Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any

12

undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his own behalf.

In *Toney v. Miller*, 564 F.Supp.2d 577 (E.D. La. 2008), a federal district found that the sanction set forth in La.Code Crim.P. art. 727 violated the defendant's constitutional right to compulsory process. The defendant failed to timely provide the required notice of alibi defense; instead, the defense responded to the State's request for notice by stating, "[u]nknown at this time. If there is an alibi, the information will be furnished when acquires [sic]." Defense counsel, who had recently taken over the defendant's case from another attorney, provided notice of two alibi witnesses immediately before trial; the defendant informed defense counsel of one of the witnesses fifteen to twenty minutes before trial. *Id*. The prior attorney had verbally notified the State three months prior to trial that there was an alibi witness though the defendant maintained that he did not know his alibi witness's identity or address. *Id*. Defense counsel argued that he should be allowed to call the witnesses to testify because he had good cause for his failure to timely notify the State. *Id*. Defense counsel explained that the defendant had not informed him about the second alibi witness because he did not know her address. The trial court found this was not good cause and ruled that neither alibi witness would testify. *Id*.

The first circuit has distinguished a set of facts from *Toney*:

> Reviewing the decision of the trial court in light of the factors enumerated above, this court is unable to conclude that the trial court abused its discretion in excluding the testimony in question. Unlike the circumstances in **Toney**, here, there is no indication that the police or the prosecution, were informed of the alibi witness before the trial. The trial court found that the defendant failed to give good cause warranting an exception to the notice requirement. We agree. There is a reasonable inference that the defendant was deliberately seeking a tactical

13

advantage in failing to give notice herein. Thus, first counseled assignment of error and the three assignments of error argued in the *pro se* brief lack merit.

*State v. Moore*, an unpublished opinion bearing docket number 09-2186, p. 4 (La.App. 1 Cir. 5/7/10).[2]

The instant case is also distinguishable from *Toney*. First, trial of the instant offenses did not occur in the same year as their commission; the offenses took place in late 2006 and early 2007, and Defendant's trial commenced in May 2009. Second, defense counsel in the instant case did not become aware of the alibi witnesses immediately before trial; the record shows that Defendant had been seeking subpoenas for these people since 2007, which was when the State requested notice of alibi witnesses. Moreover, the defense had been in possession of Mr. Myers' affidavit providing Defendant with an alibi for the Royer incident since September 2007. Thus, the information was not a surprise to the defense, even though Mr. Colwart had taken over Defendant's case shortly before trial. Third, there is no evidence that the State was put on notice that these people were potential alibi witnesses for the defense. Even though the defense insisted that the State must have had notice that it wanted to call these witnesses to testify on Defendant's behalf, the defense points to no evidence in the record showing they were alibi witnesses, and there is no showing that either the prosecution or law enforcement ever interviewed these witnesses. Thus, as in *Moore*, the defense failed to provide good cause for its failure to timely notify the State, and there is a reasonable inference that the defense delayed disclosure of the witnesses as potential sources of alibis in order to gain a tactical advantage.

_____

[2]2010 WL 1838314.

14

Moreover, the trial court gave the defense the benefit of doubt and allowed Defendant's sister, Kelly Romero, to testify. During her testimony, she could not keep the month of her story straight; she began to testify that Defendant was unable to commit the Eugene offense in January because he was with her family but, by the end of her testimony, she had altered her tale to state that, instead, Defendant had stayed with her over the same dates in December, which was when Defendant committed the Royer offense. As shown by Defendant's convictions, the jury found Miss Romero's testimony unbelievable. Coincidentally, the affidavit from Mr. Myers shows that he was going to provide an alibi for the Royer offense. Having two people provide different alibis for the same offense would not have benefitted Defendant in any way.

Additionally, Mr. Colwart did not interview Miss Romero's boyfriend and daughter, and he was not sure he would call them as witnesses at trial. The defense did not proffer their testimony into the record, so there is no material for this court to review other than defense counsel's second-hand report that Miss Romero's boyfriend was bad with dates, that he would be confused by testifying, and that Miss Romero's daughter also possibly would not recall the relevant dates. Because the specific dates would be required for alibi testimony, it is unclear from the record whether Miss Romero's boyfriend and daughter were actual alibi witnesses.

Considering the foregoing, the trial court did not abuse its discretion in barring Defendant's "last minute" alibi witnesses from testifying. Accordingly, this assignment of error is without merit.

15

# ASSIGNMENT OF ERROR NO. 4

Defendant complains, "[i]t was error for the Trial Court to admit Mr. Romero's prior convictions for use in the habitual offender proceeding in this matter." Defendant maintains the trial court improperly adjudicated him to be a fourth felony offender. Defendant avers the State introduced evidence that Defendant had seven different convictions arising from guilty pleas beginning in 1989.

Defendant postulates that his predicate guilty pleas were not intelligent and voluntary. Defendant filed documentary evidence and argued that each of the predicate convictions should not be considered.

The State replies Defendant should have objected to his prior convictions in the jurisdictions from which they arose. The State adds that once it proved the prior convictions by introducing the plea transcripts of Defendant's prior convictions, the burden of proof shifted to Defendant to prove they were defective, and Defendant made no such objections and submitted no such evidence at the hearing.

After reviewing the records submitted into evidence by the prosecution and considering the arguments by counsel, the sentencing court specifically noted that it found no constitutional defect in any of Defendant's convictions and that they were in conformity with the habitual offender law. We find no error in that determination.

The supreme court discussed the burden of proof in habitual offender proceedings based on prior felony guilty pleas:

> If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it

16

introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to a trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three *Boykin* rights.

*State v. Shelton*, 621 So.2d 769, 779-80 (La.1993) (footnote omitted). More recently, the supreme court has maintained its ruling in *Shelton*. *See State v. Clesi*, 07-564 (La. 11/2/07), 967 So.2d 488.

In *State v. Beverly*, 03-1348 (La.App. 3 Cir. 3/3/04 ), 867 So.2d 107, 111, the defendant challenged his habitual offender adjudication because, at the time of the predicate plea, he had not been fingerprinted. This court concluded that, for the habitual offender purposes, the State had met its burden of proving the constitutionality of the defendant's predicate guilty plea because it proved (1) the defendant was present in court with counsel, (2) he pled guilty to the predicate offense, and (3) at that time, "he indicated that he understood and waived his right to trial, the right against self-incrimination, and the right to confront and cross-examine witnesses against him." *Id*. at 112.

The evidence presented by the State shows that each of the seven predicate felony pleas happened, that Defendant was the person charged in each offense, and that Defendant was represented by counsel at his plea hearings; therefore, the State met its initial burden of proof. The State also established that Defendant was advised of his *Boykin* rights at the time of each plea. Therefore, under *Shelton* and *Beverly*,

17

the State met its burden of proving all seven of the pleas were usable as predicate offenses for habitual offender purposes.

Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 5

Defendant claims, "[t]he sentence imposed is excessive under the circumstances." Defendant urges that the trial court failed to adequately particularize his sentence and contends that his consecutive sentences amount to life imprisonment, which is inappropriate under the facts and circumstances of the case. Defendant further claims his offenses have primarily resulted from drugs and property crimes, so a *de facto* life sentence is not appropriate in his case. Defendant adds that the maximum sentences imposed for counts two through five are also inappropriate since Defendant is not the worst type of offender and because the trial court did not state adequate reasons for imposing the maximum sentences for those convictions.

The State responds that the nature of the offenses and Defendant's extensive criminal history support the sentences imposed by the trial court. The State maintains that, because the sentencing court could have imposed life imprisonment, seventy years was a lenient penalty.

The trial court imposed sentences for all counts on May 21, 2009. The defense does not reference any motion to reconsider sentence filed in reference to the sentences imposed on this date.

Thereafter, the trial court adjudicated Defendant a fourth and subsequent felony offender, vacated the penalty originally imposed for count 1, and resentenced Defendant to serve sixty years at hard labor on that count. Following imposition of

18

this sentence, Defendant made a verbal motion to reconsider the sentence on the basis it was excessive, and the trial court overruled the motion.

Because Defendant did not file a timely motion to reconsider his sentences alleging specific errors, review of Defendant's sentences will be limited to bare excessiveness. *See State v. Hebert*, 08-542 (La.App. 3 Cir. 11/5/08), 996 So.2d 688.

Defendant received maximum sentences for all counts of unauthorized use of a motor vehicle and aggravated flight from an officer. La.R.S. 14:68.4(B); La.R.S. 14:108.1(E). Under La.R.S. 15:529.1(A)(1)(c)(i), the sentencing range for fourth and subsequent felonies for crimes such as unauthorized use of a motor vehicle when the enhancement is not based upon two or more crimes of violence is "in no event less than twenty years and not more than his natural life." Hence, Defendant's habitual offender sentence imposed for his first count of unauthorized use of a motor vehicle is a mid-range penalty.

Even though a penalty falls within the statutory sentencing range, it is an abuse of discretion if it is shocking or makes no contribution to acceptable penal goals:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted).

In the current case, Defendant had "at least 37 prior convictions," and there was a danger of recidivism in Defendant's case. Additionally, under the current jurisprudence, the State could have multi-billed Defendant for each of his instant convictions, but it did not. *See State v. Shaw*, 06-2467 (La. 11/27/07), 969 So.2d

19

1233. Therefore, considering Defendant's extensive criminal history, his ten-year sentences for unauthorized use of a motor vehicle do not constitute an abuse of the trial court's discretion. Applying the same rationale, we find the sentencing court did not abuse its discretion in imposing the maximum term of imprisonment for Defendant's two aggravated flight convictions.

In sentencing Defendant to sixty years at hard labor for the habitual offender adjudication, the sentencing court mentioned the seven predicate felonies upon which the multiple offender adjudication had been based as well as the four other felonies Defendant was convicted of in the instant case. The trial court also noted that Defendant's actions in the aggravated flights from officers committed in the instant case had endangered human life. Considering Defendant's long history of thirty-seven prior convictions, his persistence in criminal behavior, despite the prior convictions, and the likelihood of Defendant's recidivism, the sentencing court did not abuse its discretion in imposing sixty years at hard labor.

Defendant also argues that the consecutive nature of the penalties creates unconstitutional excessiveness.

> Concurrent sentences arising out of a single cause of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive.

> Although La. C. Cr. P. art. 883 favors the imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community.

> Among the factors to be considered:

> • the defendant's criminal history;

> • the gravity or dangerousness of the offense;

• the viciousness of the crimes;

• the harm done to the victims;

• whether the defendant constitutes an unusual risk of danger to the public;

• the defendant's apparent disregard for the property of others; and

• the potential for defendant's rehabilitation.

*State v. Gatti*, 39,833, pp. 33-34 (La.App. 2 Cir. 10/13/05), 914 So.2d 74, 98, *writ denied*, 05-2394 (La. 4/17/06), 926 So.2d 511.

The record shows that the sentencing court considered these factors in ordering Defendant's penalties to run consecutively: his extensive criminal history, his willingness to endanger human life in order to facilitate his crimes, the economic harm to multiple victims, the likelihood that Defendant would commit additional offenses, Defendant's apparent disregard for the property of others, and Defendant's potential for recidivism. Since Defendant qualifies for all but one of the factors to be considered under *Gatti*, the trial court did not abuse its discretion in ordering the penalties to run consecutively.

Accordingly, this assignment of error is without merit.

**_PRO SE_ ASSIGNMENT OF ERROR:**

Defendant argues that the trial court erred in denying his *pro se* motion to recuse the trial court judge. Defendant requests a review of his motion to recuse, appointment of counsel other than the Public Defenders' Office, and remand for a full hearing on the issue. Defendant contends the trial court erred in denying his motion to recuse on the grounds that it did not contain any factual allegations. Defendant asserts this ruling did not take into account his statement at sentencing.

21

"It is well-settled jurisprudence in Louisiana that a trial judge is presumed to be impartial." *State v. Mayeux*, 06-944, p. 22 (La.App. 3 Cir. 1/10/07), 949 So.2d 520, 534. Under La.Code Crim.P. art. 674, the party seeking recusal of the judge has the burden of setting forth a valid ground for recusation:

> A party desiring to recuse a trial judge shall file a written motion therefor assigning the ground for recusation. The motion shall be filed prior to commencement of the trial unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after the facts are discovered, but prior to verdict or judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion for hearing to another judge or to a judge ad hoc, as provided in Article 675.

In order to assert a valid ground for recusing a judge, the party must both assert a ground for recusation as set forth in La.Code Crim.P. art. 671 and allege facts that, if true, would support a finding of the asserted ground for recusation; conclusory allegations are not sufficient. *State v. Bell*, 346 So.2d 1090 (La.1977). Because Defendant failed to allege any facts in his motion to recuse the trial court judge, he failed to allege a valid ground for recusal. Therefore, the trial court did not err in denying Defendant's motion to recuse.

Accordingly, this assignment of error is also without merit.

### DECREE

For the foregoing reasons, Defendant's convictions and sentences are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.

22